The CITY OF JERSEY
VILLAGE, Appellant,

v.

TEXAS NO. 3 LTD, Appellee.

No. C14–90–00801–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 2, 1991.

Rehearing Denied May 23, 1991.

Kenneth Wall, Houston, for appellant.

David F. Beale, Houston, for appellee.

Before ROBERTSON, SEARS and
DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

This is a municipal zoning case. Appellant (city) sought a permanent injunction enjoining use by appellee (partnership) of the subject land in violation of its zoning ordinance. The trial court granted appellee's motion for summary judgment and denied appellant's like motion. The sole issue is the propriety of such rulings. We affirm.

The partnership acquired a tract of land in an unincorporated area in 1982 and constructed thereon ten small buildings which it operated as a mini-storage business. Approximately one and a half acres of the land, which was previously "cow pasture," was graded to provide drainage, and covered with crushed concrete and gravel to provide a parking area for boats, motor homes and trailers. A security fence encircling all the property was installed. The grading and topping of the parking area was necessary because the land in its natural state would not support the weight of the equipment to be parked thereon.

In November, 1986, the city annexed various parcels of land, including the land owned by the partnership on which it was then operating the mini-storage and parking business. Upon annexation, the partnership's land was located in the "K" district or the "Fifth Central Business District" according to the comprehensive zoning ordinance which had been adopted by the city in 1977. District K prohibited "outside storage" except in a manner not material to the facts before us. Section XV of the zoning ordinance provided:

A. Structural nonconforming uses existing on the effective date of this ordinance may be continued.

B. Structural nonconforming use of any building or land may not be extended to any other building or land if such use would be nonconforming on the other building or land.

The ordinance did not provide an amortization technique for terminating nonconforming uses; it unequivocally permitted their continuation. Section II of the ordi-

nance contains definitions of numerous terms. "Structures" is defined as "anything constructed or erected, which requires location on the ground or attached to something having a location on the ground; including, but not limited to, all buildings of all types, advertising signs and billboards, but exclusive of customary fences or boundary or retaining walls in the side or rear yard." Although the ordinance does not define "non-conforming use", the term has been judicially defined as "a use that existed legally when the zoning restriction became effective and has continued to exist." *City of University Park v. Benners*, 485 S.W.2d 773, 777 (Tex. 1972).

After both sides filed motions for summary judgment and extensive briefs in support of their respective positions, the trial judge granted the motion of the partnership and overruled the city's motion. In her final judgment, the trial judge specifically found that the "Defendant's use of its property in question ... is a valid, preexisting non-conforming use which ... is not violative of the comprehensive zoning ordinance of the City of Jersey Village...."

While the city agrees that the partnership's use of it's storage buildings is a "structural nonconforming use", permitted under Section XV of it's zoning ordinance, it contends the court erred in finding that the outside storage on the property was permissible because outside storage is not a "structural" use.

The partnership argues that the definition of "structural", contained in the ordinance is so broad that it includes the improvement to that portion of its property used for the parking area since it "graded, drained, surfaced and fenced" the area. We agree. The question is whether that portion of the ordinance definition of structure, as applicable to the precise issue before us, includes the parking area as "anything constructed ..., which requires location on the ground ..." In oral argument the city conceded that had the parking area been constructed of concrete with reinforcing steel, it would fall within this broad definition. We can discern no reason for a distinction between that type construction and the type construction used. In either case it is something constructed on the ground, the difference being only in degree. As pointed out by the partnership, the "broad sweep" of the term "structure" was discussed at length in *El Paso Electric Co. v. Safeway Stores*, 257 S.W.2d 502, 505–506 (Tex.Civ.App.—El Paso 1953, writ ref'd n.r.e.) There the building code defined a "structure" as "a combination of materials, other than a building, to form a construction ..." Within this definition, the court held an underground concrete duct encasing electric conduits was a structure. In reaching it's conclusion, the court reviewed a number of cases from other jurisdictions where the term had been construed—one of which was *City of Rock Island v. Industrial Commission*, 287 Ill. 76; 122 N.E. 82 (1919) where it was held that an improved street was a structure. Our holding today is consistent with the reasoning of those courts. We hold, therefore, that the parking lot, constructed as the summary judgment proof indicates, was a "structure" within the broad definition of the ordinance and qualified as a structural nonconforming use existing on the effective date of the ordinance and may be continued. Appellant's points of error are overruled.

We affirm the judgment of the trial court.