**THE BOARD OF ADJUSTMENT OF THE CITY OF SAN ANTONIO,**
Petitioner,

v.

**Steve WENDE, Charles Brown, and The City of Shavano Park, Respondents.**

No. 00–1015.

Supreme Court of Texas.

Argued Nov. 6, 2001.

Decided May 23, 2002.

Steven W. Arronge, William W. Morris, Office of Atty., Bruce Robertson, Jr., San Antonio, for petitioner.

Frank B. Burney, Paul A. Fleck, Gerald T. Drought, Martin Drought & Torres, San Antonio, for respondent.

Justice RODRIGUEZ delivered the opinion of the Court.

The issue is whether San Antonio's Board of Adjustment ("the Board") erred in finding that land leased but not used for quarry purposes before being annexed and subsequently zoned for residential use has a "preexisting nonconforming use" as a quarry such that the residential zoning does not apply. The City of San Antonio's Director of the Department of Building Inspections approved the lessee's filing of a registration statement of nonconforming use based on the preexisting leases. The Board approved the director's determination, and, on writ of certiorari, the trial court affirmed the Board's decision. The

court of appeals reversed, holding that the Board misconstrued the City's development ordinances in a manner that led to an absurd result and rendered a provision of the ordinances superfluous. 27 S.W.3d 162. Because we hold that the preexisting leases establish nonconforming use rights under the City's development ordinances, we reverse the court of appeals' judgment and render judgment in favor of petitioners.

## I. Facts

Martin Marietta Materials Southwest, Inc., formerly known as Redland Stone Products Company, operates the Beckmann Quarry on property it owns. In April 1998, Martin Marietta leased for quarrying purposes the Schoenfeld and Rogers tracts, which are adjacent to the Beckmann tract. The Beckmann Quarry was annexed into the City of San Antonio in July 1998 and zoned as a quarry district. In November 1998, the City of San Antonio annexed the Schoenfeld and Rogers tracts and zoned them for residential use.

Martin Marietta filed a registration statement of nonconforming use for the Schoenfeld and Rogers tracts with Gene Camargo, the City's Director of the Department of Building Inspections. Camargo approved the registration, thereby giving Martin Marietta the right to use the Schoenfeld and Rogers tracts as part of its quarrying operations in the area. Steve Wende, Charles Brown, and other San Antonio taxpayers, and the City of Shavano Park, a municipality near the quarry, appealed Camargo's decision to the Board.

At the hearing before the Board, Martin Marietta produced evidence, including Camargo's testimony, to support its right to use the property for quarrying as a nonconforming use. Specifically, Martin Marietta argued that its nonconforming use rights were supported by its preexisting (preannexation) leases. The Board affirmed Camargo's decision, and later issued findings of fact and conclusions of law in which it found that "Camargo's determination was correct because a preexisting lease on the property [for quarrying purposes] gave Redland Stone Products Company nonconforming use rights." The taxpayers and the City of Shavano Park sought a writ of certiorari from the district court to reverse the Board's decision. The trial court affirmed the Board's decision. Wende, Brown, and the City of Shavano Park (collectively, "Wende") appealed the trial court's judgment.

After construing the City Development Code's nonconforming use provisions and definitions, and examining the common law and other cities' zoning ordinances, the court of appeals noted that the Board's construction of the provisions would allow a person to obtain nonconforming use rights not only by leasing property for a nonconforming purpose, but also by merely intending to use a property for a nonconforming use. It reasoned that such a construction produced an absurd result because it would be so "diametrically at odds with the fundamental conception of nonconforming uses throughout this country." 27 S.W.3d at 170. Additionally, for reasons explained below, the court of appeals concluded that the Board's construction rendered a portion of the City's Development Code superfluous. *Id.* at 171. Accordingly, the court of appeals held that the preexisting leases were not sufficient to establish nonconforming use rights. *Id.* Martin Marietta and the Board petitioned this Court for review.

## II. Mootness

■ Before addressing the merits of this case, we must first determine whether the controversy has become moot. Wende argues that the case is moot for three

reasons. First, Wende suggests that the controversy is mooted by the recent enactment of Local Government Code section 43.002(a)(2), which allows a landowner to establish nonconforming use rights based on a preannexation planned use. Second, Wende argues that while the appeal has been pending in this Court, the City has rezoned the land at issue from residential to quarry district, giving Martin Marietta all the relief it seeks. And finally, Wende points out that Martin Marietta and the City of Shavano Park have entered into a settlement agreement that prohibits Shavano Park from interfering with Martin Marietta's mining of the tracts and an operating agreement that affords Wende the protections sought to keep quarry operations from moving closer to residential communities. Wende contends that the settlement agreement and operating agreement thus moot this controversy.

Martin Marietta and the Board disagree. The Board responds that it is not a party to the settlement agreement, and urges that the court of appeals' opinion erroneously rewrites the City ordinances at issue. Martin Marietta adds that any rezoning that has occurred confers rights inferior to those it would have under nonconforming use, and the referenced settlement and operating agreements resolve only a federal lawsuit and a state court nuisance suit not at issue in this appeal.

■ It is well settled that "a controversy must exist between the parties at every stage of the legal proceedings, including the appeal." *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex.2001). "If a controversy ceases to exist—'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome'—the case becomes moot." *Id.* (quoting *Murphy*

*v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982)).

We agree with the Board and Martin Marietta that the controversy is not moot. While Local Government Code section 43.002(a)(2) appears to "grandfather" planned use of annexed property subject to certain filings and applications, TEX. LOC. GOV'T CODE § 43.002(a)(2)(A)–(B) (Supp. 2002), Wende concedes that it does not apply to this case because the provision did not become effective until 1999,[1] after the 1998 annexations at issue in this case. Additionally, we agree with Martin Marietta that any rights it received by virtue of the recent rezoning of its property for quarry use are inferior to the nonconforming use rights it seeks. For instance, the right to quarry under the rezoning is subject to challenge for three years after the effective date of the rezoning. *See id.* § 51.003(a)(1) (Supp.2002). The three-year window does not apply to the nonconforming use rights that the Board affirmed, making the nonconforming use rights superior. Finally, the settlement agreement and the operating agreement do not dispose of the controversy between the Board and Wende, and they do not eliminate the nonconforming use dispute between Wende and Martin Marietta.

### III. Analysis

Having decided that the controversy is not moot, we turn to the merits. In order to resolve this case, we must construe several provisions of San Antonio's Unified Development Code. Martin Marietta filed its registration statement of nonconforming use under section 35–3064(a) of the City's Unified Development Code, which is entitled "Registration of nonconforming uses and structures," and provides that "[t]he owner of a nonconforming use or structure may register such nonconform-

1. Act of May 30, 1999, 76th Leg., R.S., ch. 1167, § 17, 1999 Tex. Gen. Laws 4074, 4090.

ing use or structure by filing with the department of building inspections a registration statement." San Antonio, Tx., Unified Development Code § 35–3064(a). Subsection (d) explains that "[t]he owner of a nonconforming use or structure in *newly annexed* territory is permitted one (1) year after the effective date of the annexation to register such use or structure." *Id.* § 35–3064(d) (emphasis added).

Development Code section 35–1041, entitled "Definitions," provides that the "terms, phrases, words, and their derivations shall have the meaning given in this section." *Id.* § 35–1041. That section then defines the terms "use" and "nonconforming use." "Use" means "[t]he purpose for which land or structures thereon is designed, arranged, or intended to be occupied or used, or for which it is occupied, maintained, rented or leased." *Id.* "Nonconforming use" means "the use of an existing property or structure after the effective date of this chapter, which does [not][2] comply with the use regulations applicable to the district in which the property is located." *Id.*

The Development Code also contains section 35–3067, which provides:

> Nonconforming rights may be granted to newly annexed areas in accordance with the following provisions and upon payment of the fees specified in Exhibit C. All applications for nonconforming use rights must be filed within sixty (60) days of the effective date of annexation.
>
> (a) *Incomplete construction.*
>
> (1) Construction may be completed on any structure legally under construction upon annexation provided:
>
> a. The owner . . . applies to the director of building inspections for a permit to authorize further work on the structure stating the proposed use of the structure and attaching thereto the plans and specifications relating to the construction; and
>
> b. The construction is completed within two (2) years of the effective date of the annexation.
>
> \* \* \*
>
> (b) *Proposed construction.*
>
> (1) Proposed construction may be completed upon a finding by the zoning commission that sufficient evidence exists that planning for the proposed use was in progress prior to annexation. . . .
>
> \* \* \*
>
> (2) . . . The applicant shall have six (6) months from the date of the zoning commission's favorable determination to secure all building permits. After that time, the nonconforming rights shall expire.

*Id.* § 35–3067(a), (b) (Entitled "Newly annexed territory"). In order to establish nonconforming use rights under section 35–3067, an applicant must either apply to the director of building inspections for permits to complete incomplete construction, *id.* § 35–3067(a)(1)(a), or, for proposed construction, file with the zoning commission a site plan, certain financial information, an affidavit of ownership, and a narrative explaining its proposed project and its status. *Id.* § 35–3067(b)(1)(a)–(d).

### A

As noted above, Martin Marietta filed, and both Camargo and the Board approved, Martin Marietta's nonconforming use registration under section 35–3064, not

---

**2.** No one disputes that due to a typographical error, the word "riot" incorrectly appears in this provision instead of the word "not." We will quote the provision as if the word "not" appears.

section 35–3067. Martin Marietta contends here, as it did in the court of appeals and other proceedings below, that the City's Development Code incorporates the definition of the word "use" into the term "nonconforming use." Thus, under the Development Code, a "nonconforming use" would exist when the "purpose for which land ... is ... leased" does not "comply with the use regulations applicable to the district in which the property is located." SAN ANTONIO, TX., UNIFIED DEVELOPMENT CODE § 35–1041. Camargo reasoned that Martin Marietta's preexisting leases provided the basis for nonconforming use rights under section 35–3064. The Board affirmed his determination on that ground. The district court affirmed the Board's decision.

The court of appeals, however, reasoned that the leases could not underpin the nonconforming use rights under section 35–3064 because such a construction produced an absurd result contrary to both the common law and other cities' zoning ordinances, and rendered section 35–3067(b) superfluous. 27 S.W.3d at 171. The court of appeals first looked to the common law to determine whether mere intent to use property for nonconforming use was sufficient to establish a right of nonconforming use. It concluded that "[a] nonconforming use is one that lawfully existed before the effective date of a zoning restriction and that is allowed to continue to exist in nonconformance with the restriction." Id. at 169 (citing 8A EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 25.186 (3rd ed. 1984)). The court of appeals also noted that well-settled common law requires "that a nonconforming use must be actual, rather than merely contemplated [at the time of annexation]." 27 S.W.3d at 169 (citing City of Pharr v. Pena, 853 S.W.2d 56, 64 (Tex.App.—Corpus Christi 1993, writ denied); City of Silsbee v. Herron, 484 S.W.2d 154, 156 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.); and Huguley v. Bd. of Adjustment, 341 S.W.2d 212, 218 (Tex.Civ.App.—Dallas 1960, no writ)). Moreover, merely "[a]cquiring and setting aside property in contemplation of a future use is insufficient to establish a nonconforming use." 27 S.W.3d at 169 (citing Caruthers v. Bd. of Adjustment, 290 S.W.2d 340, 347 (Tex.Civ. App.—Galveston 1956, no writ)). More specifically, the court of appeals determined that "leasing land in reliance on existing zoning laws has generally been held insufficient to establish nonconforming use." 27 S.W.3d at 169 (citing State ex rel. Drury Displays, Inc. v. City of Shrewsbury, 985 S.W.2d 797, 800 (Mo.Ct. App.1998)). Accordingly, the court of appeals held that both Texas common law and that of other states prohibits the use of leases, without more, to establish a nonconforming use. 27 S.W.3d at 171.

The court of appeals also noted that such an incorporation of the definition of "use" would also create a nonconforming use whenever a person could establish a preannexation "'purpose for which land ... is designed, arranged or intended to be ... used.'" Id. at 170 (quoting SAN ANTONIO, TX., UNIFIED DEVELOPMENT CODE § 35–1041) (emphasis added in court of appeals' opinion). Although it did "not question the City's power to adopt such a definition," it believed that the City would have to have been more explicit in intending an "absurd result" so "diametrically at odds with the fundamental conception of nonconforming uses throughout this country." 27 S.W.3d at 170.

Additionally, the court of appeals concluded that Martin Marietta's construction rendered section 35–3067(b) superfluous. Id. at 171. That section, the court concluded, provides the procedure for obtaining nonconforming use rights in a newly annexed area if the nonconforming use did

not exist before the annexation. *Id.* (citing SAN ANTONIO, TX., UNIFIED DEVELOPMENT CODE § 35–3067(b)). Under section 35–3067, the court reasoned, an owner must convince the zoning commission that " 'planning for the proposed use was in progress prior to annexation,' " must submit a site plan and evidence of financial commitment, and must comply with other procedures beyond merely filing a registration statement with the Department of Building Inspections. 27 S.W.3d at 171 (quoting SAN ANTONIO, TX., UNIFIED DEVELOPMENT CODE § 35–3067(b)(1)(a)–(d)). Unable to find a meaningful distinction between the preannexation "intent" to use property described in the definition of "use" and the "planning for the proposed use . . . in progress prior to annexation" in Development Code section 3503067(b), the court of appeals concluded that "any owner who is planning for a proposed use could bypass the more onerous procedures set out in section 35–3067 and simply file a registration statement under section 35–3064." 27 S.W.3d at 171. Despite Camargo's testimony before the Board of Adjustment that section 35–3067 applies only if the owner plans to complete or proposes to construct a building or structure that requires a building permit, the court of appeals concluded that section 35–3064 would also apply to that owner. 27 S.W.3d at 171. Accordingly, the court of appeals held that the Board's and Martin Marietta's incorporation of the definition of "use" into that of "nonconforming use" rendered section 35–3067 superfluous. *Id.*

The Board and Martin Marietta argue that the court of appeals misconstrued the City Development Code's definition of the words "use" and "nonconforming use," and thus erred in concluding that Martin Marietta's preexisting leases on the Rogers and Schoenfeld tracts were insufficient to establish nonconforming use rights. They argue that the unambiguous definitions of

"use" and "nonconforming use" compel the conclusion that a "nonconforming use" exists when the "purpose for which land or structures thereon is designed, arranged, or intended to be occupied or used, or for which it is occupied, maintained, rented or leased." SAN ANTONIO, TX., UNIFIED DEVELOPMENT CODE § 35–1041. In this case, no one disputes that the tracts were leased for quarry purposes. Thus, the Board and Martin Marietta urge that their filing under section 35–3064 was sufficient because Martin Marietta did not propose to begin or complete any construction requiring building permits such that section 35–3067 would apply. Because they contend that the words are unambiguous, the Board and Martin Marietta believe that the court of appeals erred in using definitions other than those that the San Antonio City Council crafted in its legislative capacity. They argue that the City's Development Code ordinances are presumed valid and that a court must not rewrite them merely because it disagrees with their policy objective. *See City of Fort Worth v. Johnson*, 388 S.W.2d 400, 402 (Tex.1964).

**B**

 Courts use the same rules that are used to construe statutes to construe municipal ordinances. 27 S.W.3d at 170 (citing *Mills v. Brown*, 159 Tex. 110, 316 S.W.2d 720, 723 (1958)). Thus, our objective in construing the Development Code provisions at issue is to discern the San Antonio City Council's intent. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999). In making this determination, we look first to the plain meaning of the words of the provisions. *Id.* In giving effect to the legislative enactment as a whole, we "should not assign a meaning to a provision that would be inconsistent with other provisions of the [Development Code]."

*Meritor Auto., Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86, 90 (Tex.2001) (citing *Hammond v. City of Dallas,* 712 S.W.2d 496, 498 (Tex.1986) (examining city charter as a harmonious whole rather than in isolated pieces)). Finally, "a zoning ordinance, duly adopted ..., is presumed to be valid, and the burden is on one seeking to prevent its enforcement ... to prove that the ordinance is arbitrary or unreasonable." *City of Fort Worth,* 388 S.W.2d at 402. "Adoption of a zoning ordinance by the governing body of a city represents the exercise of a delegated legislative discretion, and enforcement or nonenforcement of the ordinance is not a matter for judicial discretion." *Id.*

◼ We agree with the Board and Martin Marietta that the preexisting leases establish Martin Marietta's nonconforming use rights under section 35–3064 and the Development Code's definitions of "use" and "nonconforming use." The Development Code provides that "terms, phrases, words, and their derivations shall have the meaning given in this section." SAN ANTONIO, TX., UNIFIED DEVELOPMENT CODE § 35–1041. It then defines the words "use" and "nonconforming use."

As the court of appeals acknowledged, it is undisputed that Martin Marietta leased the Rogers and Schoenfeld tracts for quarrying purposes before the tracts were annexed. No party disputes that quarrying rights do not comply with residential zoning. Utilizing the Development Code's definitions, we must insert the applicable portion of the definition of "use" into the definition of "nonconforming use." The result, as the court of appeals noted but then disregarded, is that a "nonconforming use exists when 'the purpose for which land ... is ... leased' does not 'comply with the [applicable] use regulations.'" 27 S.W.3d at 170 (quoting SAN ANTONIO, TX., UNIFIED DEVELOPMENT CODE § 35–3041).

◼ Regardless of the court of appeal's determination that the common law[3] and other cities' zoning ordinances[4] require actual preannexation use to establish nonconforming rights, the proper focus is on the City's own legislative enactments. *See Sorokolit v. Rhodes,* 889 S.W.2d 239, 241 (Tex.1994). The City's adoption of the ordinances at issue is within its legislative discretion. *City of Fort Worth,* 388 S.W.2d at 402. Therefore, the City's determination—that leasing land, or showing that the land was designed, arranged, or intended to be used for a nonconforming purpose can establish nonconforming use rights—is not absurd merely because it is contrary to the common law and other

---

3. *City of Univ. Park v. Benners,* 485 S.W.2d 773, 777 (Tex.1972) (relying on common-law requirement that a nonconforming use must legally exist when a rezoning takes place); *City of Pharr v. Pena,* 853 S.W.2d 56, 64 (Tex.App.—Corpus Christi 1993, writ denied) (same); *City of Jersey Village v. Texas No.3 Ltd.,* 809 S.W.2d 312, 313 (Tex.App.—Houston [14th Dist.] 1991, no writ) (same); *City of Silsbee v. Herron,* 484 S.W.2d 154, 156–57 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.) (same); *Biddle v. Bd. of Adjustment, Village of Spring Valley,* 316 S.W.2d 437, 442 (Tex.Civ.App.—Houston 1958, writ ref'd n.r.e.) (same); *Caruthers v. Bd. of Adjustment,* 290 S.W.2d 340, 347 (Tex.Civ.App.—Galveston 1956, no writ) (same).

4. *Thomas v. City of San Marcos,* 477 S.W.2d 322, 324 (Tex.Civ.App.—Austin 1972, no writ) (relying on local ordinance requiring nonconforming use to exist at the time of annexation); *City of Carthage v. Allums,* 398 S.W.2d 799, 802 (Tex.Civ.App.—Tyler 1966, no writ) (relying on ordinance requiring continuous nonconforming use during the one year preceding annexation); *City of Dallas v. Fifley,* 359 S.W.2d 177, 181–82 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.) (same as *Thomas*); *Huguley v. Bd. of Adjustment,* 341 S.W.2d 212, 218 (Tex.Civ.App.—Dallas 1960, no writ) (same).

cities' zoning ordinances. Under the City's Development Code, Martin Marietta established its preexisting nonconforming use rights by showing that it leased the land for use as a quarry.

The court of appeals also erred in holding that the Board's construction of the Development Code rendered section 35–3067 superfluous. We should read statutes to avoid conflict and superfluities if possible. *City of Amarillo v. Martin,* 971 S.W.2d 426, 430 (Tex.1998). Applicants seeking to establish nonconforming use in order to complete proposed or incomplete construction[5] in newly annexed areas must use the procedures described in Development Code section 35–3067. That provision expressly addresses proposed and incomplete construction. SAN ANTONIO, TX., UNIFIED DEVELOPMENT CODE § 35–3067(a), (b). Subsection (b) provides that "[p]roposed construction may be completed . . . [if] planning for the proposed use was in progress prior to annexation." *Id.* § 35–3067(b). Thus, proof of planning for the proposed use is a predicate to lawfully proceeding with construction that did not commence before annexation. While those seeking merely to preserve nonconforming use rights—with no construction requiring building permits—may proceed under section 35–3064, those seeking to complete or begin construction must utilize the more onerous procedures described in section 35–3067. Construed in this manner, section 35–3067 is not superfluous.

On the other hand, applicants for nonconforming use rights who do not propose construction could never gain permanent nonconforming use rights under section 35–3067. Applicants who establish nonconforming use rights under section 35–

3067(b)(1) for "[p]roposed construction" must "secure all building permits" within six months "from the date of the zoning commission's favorable determination." *Id.* § 35–3067(b)(2). Moreover, "[a]fter that time, the nonconforming rights shall expire." *Id.* If an applicant does not propose construction or if the proposed construction does not require the applicant to secure building permits, any nonconforming rights would expire six months after they were granted. Wende urged in the lower courts that a quarry requires "construction" but never suggested that the construction was such that building permits were required under section 35–3067. Camargo testified that he had no notice that construction "of any sort that would require building permits" was anticipated on the property. In short, there is nothing in the record that indicates that Martin Marietta plans to construct anything that would require building permits in order to use the tracts for quarrying. Thus, if Martin Marietta were required to proceed under section 35–3067(b), even if it convinced the zoning commission that it had sufficiently planned, before annexation, to use these tracts for quarrying, its success would be short-lived because its nonconforming use rights would expire when it did not secure building permits for proposed construction within six months after the date nonconforming use rights were granted.

\* \* \* \* \* \*

In sum, we hold that Martin Marietta's preexisting leases are sufficient to establish its nonconforming use rights under the City's Unified Development Code. Accordingly, we reverse the court of appeals'

---

5. We express no opinion about the rights or obligations of parties seeking to establish nonconforming rights for master plans, not at issue in this case, as addressed in section 35–3067(c).

judgment and render judgment in favor of the Board and Martin Marietta.

Justice JEFFERSON did not participate in the decision.