TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-03-00697-CV






Joaquin Garcia, Appellant


v.


Fifth Club, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT

NO. GN201490, HONORABLE PAUL DAVIS, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Joaquin Garcia appeals the trial court's no-evidence summary judgment against him
on his claims that Fifth Club, Inc. was negligent and grossly negligent in failing to provide adequate
security. Garcia asserts that the judgment is erroneous because he produced more than a scintilla of
evidence raising genuine issues of material fact regarding all the essential elements of negligence
and gross negligence. See Tex. R. Civ. P. 166a(i). We will affirm the take-nothing judgment on the
gross negligence claim, but reverse the judgment as to the negligence claim and remand this cause
to the district court for further proceedings regarding the negligence claim.


BACKGROUND


 Joaquin Garcia was shot six times by an unknown assailant in the parking lot
adjoining Club Rodeo, one of several night clubs owned by Fifth Club, Inc. Garcia was involved
in an altercation inside the club with a man who allegedly harassed Garcia's dance partner. Fifth
Club's bouncers ejected the harasser and his companions. When leaving the club about 45 minutes
later, Garcia was shot by an unidentified man. Garcia did not see his assailant's face but was at least
80% sure that the attack was motivated by the earlier incident because he did not know anyone else
who would want to shoot him.

 Garcia filed this action against Fifth Club for negligence and gross negligence in its
failure to provide adequate security at Club Rodeo. He claims that Fifth Club had a duty to protect
him from the criminal acts of third parties, which it knew or should have known were likely to occur
because of the nature of the business and the recent history of Club Rodeo.

 Fifth Club filed a motion for summary judgment asserting that there was no evidence
to support duty, breach, or proximate cause because there was no evidence that Fifth Club should
have foreseen that an unknown third party would shoot Garcia.

 In response, Garcia produced evidence to support his claims of negligence and gross
negligence. Fifth Club co-owner Salim Salem testified at his deposition that he knew of such
problems at nightclubs generally, at his other clubs, and at Club Rodeo specifically. By affidavit,
Garcia's security expert, Edmund Pankau, stated that within the year before the shooting Fifth Club
created an atmosphere conducive to violence at Club Rodeo. Within a year before the shooting, Fifth
Club received citations for selling alcohol to intoxicated persons at Club Rodeo and for hosting 937
people in a club with a capacity of 477 people. A report of police responses to emergency calls at
Club Rodeo listed over twenty incidents--fourteen involving violence--during the year before
Garcia's shooting. These incidents included an assault with contact, assault on a police officer,
aggravated assault, aggravated robbery, a bomb threat, and auto theft. Pankau stated in his affidavit
that, one week before Garcia's shooting, a disturbance occurred involving a man brandishing a gun
in the parking lot. Garcia introduced evidence that Club Rodeo's bouncers did not coordinate with
outside security guards, who were employed by an independent security company, to ensure that
ejected patrons left the premises. He also introduced evidence that Fifth Club required the outside
security guards to stay by the door instead of patrolling the parking lot--a requirement that
contradicted Fifth Club's agreement with the security company. Fifth Club did not modify these
security procedures despite the previous incidents on Club Rodeo's premises.

 The trial court granted Fifth Club's summary-judgment motion without stating a
particular basis.


DISCUSSION



 Garcia raises two issues on appeal. He asserts that the summary judgment in favor
of Fifth Club was improper because he produced more than a scintilla of evidence to support each
element of his claims for negligence and gross negligence.

 A party seeking a no-evidence summary judgment must assert that no evidence exists
as to one or more of the essential elements of the nonmovant's claims on which the nonmovant
would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); Holmstrom v. Lee, 26 S.W.3d 526,
530 (Tex. App.--Austin 2000, no pet.). The burden then shifts to the nonmovant to raise a fact issue
on the challenged elements. Perdue v. Patten Corp., 142 S.W.3d 596, 603 (Tex. App.--Austin
2004, no pet.). A no-evidence summary judgment is improper if the nonmovant brings forth more
than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential
element of the nonmovant's claim on which he would have the burden of proof at trial. King Ranch,
Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when
the evidence supporting a finding rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions; less than a scintilla of evidence exists when the evidence is so
weak as to do no more than create a mere surmise or suspicion of a fact. Id.

 In reviewing a no-evidence summary judgment, we must decide whether the plaintiff
has produced any evidence of probative force to raise fact issues on the material questions presented. 
Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). We review the evidence in the light
most favorable to the nonmovant, disregarding all contrary evidence and inferences.  Id. at 601.


Negligence


 The essential elements of a negligence claim are a legal duty owed to the plaintiff by
the defendant, breach of that duty, and damages proximately caused by that breach. D. Houston, Inc.
v. Love, 92 S.W.3d 430, 454 (Tex. 2002). Fifth Club asserts that there was no evidence to support
duty, breach, or proximate cause. We must determine whether Garcia has produced more than a
scintilla of evidence as to each element of his claim.


Duty

 In general, a person has no legal duty to protect another from the criminal acts of a
third person. Timberwalk Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex. 1998). 
But circumstances may create such a duty:


 Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no
duty to exercise any care until he knows or has reason to know that the acts of the
third person are occurring, or are about to occur. He may, however, know or have
reason to know, from past experience, that there is a likelihood of conduct on the part
of third persons in general which is likely to endanger the safety of the visitor, even
though he has no reason to expect it on the part of any particular individual. If the
place or character of his business, or his past experience, is such that he should
reasonably anticipate careless or criminal conduct on the part of third persons, either
generally or at some particular time, he may be under a duty to take precautions
against it, and to provide a reasonably sufficient number of servants to afford a
reasonable protection.


Restatement (Second) of Torts § 344 cmt. f. (1965); see also Mellon Mortgage Co. v. Holder, 5
S.W.3d 654, 658 (Tex. 1999) (Abbott, J., plurality); Timberwalk, 972 S.W.2d at 759 (Spector, J.,
concurring). Foreseeability requires only that the general danger be foreseeable, not the exact
sequence of events that produced the harm. Timberwalk, 972 S.W.2d at 756. When the general
danger is the risk of injury from criminal activity, the evidence must reveal specific previous crimes
on or near the premises in order to establish foreseeability. Id. Factors to consider in determining
foreseeability are: (1) whether any criminal conduct previously occurred on or near the property; (2)
how recently the criminal conduct occurred; (3) how often crime has occurred; (4) how similar the
conduct was to the conduct on the property; and (5) what publicity was given to the occurrences to
show that the landowner knew or should have known about them. Id. at 757. We must analyze these
factors together in determining whether criminal conduct was foreseeable. See id. at 759.

 Applying the Timberwalk factors, we conclude that Garcia has produced some
evidence of foreseeability. Garcia presented evidence that, within the calendar year preceding his
injuries, the police had been summoned over twenty times to Club Rodeo. Fourteen of these calls
involved reports of violence, including an aggravated robbery and aggravated assault.

 The violent crimes reported at Club Rodeo are sufficiently similar to the shooting of
Garcia to be a valid basis for comparison under Timberwalk. As the Timberwalk court
acknowledged, "[a] string of assaults and robberies . . . make the risk of other violent crimes, like
murder and rape, foreseeable." Timberwalk, 972 S.W.2d at 758. Regarding the proximity factor,
the reported crimes occurred on the same Club Rodeo property where Garcia was later shot. See
Timberwalk, 972 S.W.2d at 757, 759 ("For a risk to be foreseeable, there must also be evidence of
criminal activity within the specific area at issue, either on the landowner's property or closely
nearby," and looking to crimes committed within one-mile radius). As for recency, the crimes
occurred within one year prior to Garcia's shooting. Id. at 759 (comparing record of similar crimes
committed in preceding year); Urena v. Western Investments, Inc., 122 S.W.3d 249, 255 (Tex.
App.--Houston [1st Dist.] 2003, pet. granted) (considering crimes committed within prior three
years). Regarding frequency, the fourteen reported violent crimes on Club Rodeo property in the
year preceding Garcia's shooting averaged more than one reported violent crime each month. See
Urena, 122 S.W.3d at 255 (characterizing eight violent crimes over three-year period as "significant
number").

 Finally, regarding publicity, Fifth Club knew or should have known of these incidents. 
During his deposition, Fifth Club's owner, when presented with a list of crimes reported on the Club
Rodeo property, testified that he was not surprised by the extent of criminal activity reported. In
light of this admission, moreover, we reject Fifth Club's argument that the crime reports Garcia
produced are not probative under Timberwalk because they are not evidence of "actual crimes" but
"only calls." See Timberwalk, 972 S.W.2d at 752, 759.

 Applying the Timberwalk factors to the summary judgment evidence, which we must
view in the light most favorable to Garcia, we conclude that Garcia has raised a genuine issue of
material fact regarding whether it was reasonably foreseeable to Fifth Club that its patrons would
be subject to violent criminal acts at Club Rodeo, including attempted murder or aggravated assault. 
Thus, there is a genuine issue of material fact as to whether Fifth Club owed Garcia a legal duty to
protect him from the violent criminal acts of third parties. See Urena, 122 S.W.3d at 256.


Breach

 Garcia's security expert, Edward Pankau stated that Fifth Club breached the standard
of care for nightclubs to deter and prevent crime on their premises. He opined that Fifth Club
breached this standard of care in several regards, by failing (1) to adequately train its inside bouncers,
(2) to ensure adequate communication between its inside staff and the outside security officers, (3)
to provide video surveillance of the parking lot, and (4) to allow or require outside security to patrol
the parking lot. Garcia has raised a genuine issue of material fact as to the breach of Fifth Club's
duty to Garcia.


Proximate cause

 Similarly, Garcia has shown that a material fact issue exists as to whether Fifth Club's
negligence proximately caused Garcia's injuries. A plaintiff must show that the defendant's act or
omission is a proximate cause of his injuries in order to establish a negligence claim. See Love, 92
S.W.3d at 454. The elements of proximate cause are foreseeability and cause in fact. Id.

 Foreseeability means that a person of ordinary intelligence and prudence should have
anticipated the dangers that his conduct created for others. Id. The foreseeability analysis is the
same for duty and proximate cause. Mellon, 5 S.W.3d at 659; Garcia v. Cross, 27 S.W.3d 152, 157
(Tex. App.--San Antonio 2000, no pet.); see also Urena, 122 S.W.3d at 253-54. In our earlier
discussion of duty, we determined that Garcia has raised a fact issue regarding foreseeability; that
analysis thus shows a fact issue regarding the foreseeability element of proximate cause.

 Cause in fact exists when the act or omission was a substantial factor in bringing
about the injuries without which the harm would not have occurred. IHS Cedars Treatment Center
of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 799 (Tex. 2004). Cause in fact is not established
where the defendant's negligence does no more than furnish a condition which makes the injuries
possible. Id. In other words, the conduct of the defendant may be too attenuated from the resulting
injuries to the plaintiff to be a substantial factor in bringing about the harm.  Id.

 Pankau concluded that Garcia's injuries were causally linked to the failure of
bouncers to properly coordinate their efforts with outside security and to generally inadequate
security in the parking lot. He opined that the lack of coordination between inside and outside
security left the outside security unaware of the potentially heightened risk of violence against guests
like Garcia, a victim of harassment by other patrons who were then ejected from the club. Pankau
also asserted that the inadequate security in the parking lot--the absence of video surveillance and
the prohibition of patrolling the lot--made all patrons more susceptible to crime. This evidence
raises an issue of material fact as to whether Fifth Club's acts or omissions were the cause in fact of
Garcia's injuries.

 Fifth Club relies on cases holding that the action of a third party supersedes the effect
of any negligence to be the cause in fact of the plaintiff's injuries. See Palacio v. AON Props., Inc.,
110 S.W.3d 493, 499 (Tex. App.--Waco 2003, no pet.); Price v. Ford, 104 S.W.3d 331 (Tex.
App.--Dallas 2003, pet. denied). In Palacio, a man was shot in his apartment by people who came
to the door at 1 a.m. and asked for him by name. 110 S.W.3d at 495. The court held that the
targeted nature of the shooting overcame any general responsibility of the apartment complex for
protecting residents. The court held that the fact that Palacio's roommate opened the door to the
shooters and Palacio went to meet them showed that they would not have been deterred even had
security officers questioned the shooters regarding their intentions. Id. at 499. Fifth Club also relies
on Price, in which a bar patron who was severely beaten for up to three minutes with a pool cue and
barstool alleged that the bar negligently provided inadequate security. 104 S.W.3d at 332. The
expert testified that the bar's security officers should have responded within 30 seconds to the
beating and would thereby have prevented some of the victim's injuries. Id. at 333. After a non-jury
trial, the trial court awarded damages to the plaintiff. Id. at 332. The court of appeals reversed,
noting that the expert did not opine that the guards could have responded in 30 seconds and merely
speculated that the victim's injuries would have been prevented by such timelier intervention. Id.

 Neither case supports this summary judgment. Unlike in Palacio, in which the
apartment residents opened the door to the assailants and called the victim into the room, thereby
breaking the chain of causation from any omissions by the landlord, see 110 S.W.3d at 495, there
is no evidence of any intervening acts or omissions breaking the chain of causation from what the
evidence, viewed most favorably to Garcia, shows to be Fifth Club's breach of its duty to protect its
patrons from violent criminal acts of third parties. Unlike in Price, there is no assumption in
Garcia's evidence that the attack itself was unpreventable. See 104 S.W.3d at 333. Instead, Garcia
presented evidence that Fifth Club failed to take steps to protect patrons in the parking lot--e.g., by
installing video surveillance or permitting security officers to patrol the parking lot. These causal
links concerning the dangers of the parking lot apply whether the shooter was a stranger or a
previous attacker. If the shooter was a previous attacker, the failure to communicate the ejection to
outside security officers prevented them from knowing that the attackers were specific threats to
harm Garcia.

 We conclude that Garcia introduced more than a scintilla of evidence supporting each
element of his negligence claim. The district court erred by granting a no-evidence summary
judgment that he take nothing by his negligence claim.


Gross negligence

 To review the summary judgment against Garcia's claim of gross negligence, we must
determine whether there is any evidence that Fifth Club was consciously indifferent to an extreme
risk of harm to its patrons at Club Rodeo. The difference between negligence and gross negligence
is one of degree rather than kind. Trevino v. Lightning Laydown, Inc., 782 S.W.2d 946, 949 (Tex.
App.--Austin 1990, writ denied). The definition of gross negligence adds two required elements: 
"(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme
degree of risk . . . and (2) the actor must have actual, subjective awareness of the risk involved, but
nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." 
Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 22 (Tex. 1994). Gross negligence differs from
ordinary negligence because it requires extreme risk and conscious indifference to that risk. Id. at
21. Extreme risk entails a likelihood of serious injury to the plaintiff, while conscious indifference
means that the defendant knew about the peril, but its acts or omissions demonstrated that it did not
care. Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex. 2001). Circumstantial evidence
is sufficient to prove either element. Id.

 Garcia argues that evidence of Fifth Club's failure to implement changes to its
security policies in response to previous violent incidents is some evidence of conscious indifference
to an extreme degree of physical risk. He points to the incident report for Club Rodeo--which
includes several assaults within a year of Garcia's shooting and a gun-brandishing incident within
the previous week. Fifth Club co-owner Salem stated in his deposition testimony that he did not
change his security procedures in response to these incidents. Furthermore, the outside security
company's manager stated in his deposition that he complained that restricting the outside security
to positions at the club entrance kept the security team from adequately securing the parking lot.

 But this is not evidence of the severity necessary to prove gross negligence. None
of the prior incidents shows an extreme degree of risk of serious injury to Garcia. None of the
previous incidents at Club Rodeo involved shootings, and there is no evidence that there was any
indication that Fifth Club or even Garcia knew of any risk that the ejected harassers (or anyone else)
intended to shoot him; Garcia testified that he believed he was shot by the ejected harassers because
he could not think of anyone else who would want to shoot him. Although Fifth Club's efforts to
protect against known or foreseeable dangers were imperfect and may have been negligent, there is
no evidence that Fifth Club was unconcerned about an extreme degree of risk that Garcia would be
shot in its parking lot. See Diamond Shamrock Refining Co. L.P. v. Hall, No. 02-0566, 2005 Tex.
LEXIS 49, at *21 (Tex. Jan. 21, 2005).

 The district court did not err by granting the no-evidence summary judgment that
Garcia take nothing by his gross negligence claim.


CONCLUSION


 We conclude that Garcia produced some evidence to support each element of his
negligence claim, but did not produce any evidence supporting each element of his gross negligence
claim. Accordingly, we reverse the take-nothing summary judgment against Garcia's negligence
claim and affirm the take-nothing summary judgment against Garcia's gross-negligence claim. We
remand the negligence claim for further proceedings in the district court.



 

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed in Part; Reversed and Remanded in Part

Filed: February 3, 2005