# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-03-00697-CV
---

**Joaquin Garcia, Appellant**

**v.**

**Fifth Club, Inc., Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. GN201490, HONORABLE PAUL DAVIS, JUDGE PRESIDING
---

### M E M O R A N D U M   O P I N I O N

Joaquin Garcia appeals the trial court's no-evidence summary judgment against him

on his claims that Fifth Club, Inc. was negligent and grossly negligent in failing to provide adequate

security. Garcia asserts that the judgment is erroneous because he produced more than a scintilla of

evidence raising genuine issues of material fact regarding all the essential elements of negligence

and gross negligence. *See* Tex. R. Civ. P. 166a(i). We will affirm the take-nothing judgment on the

gross negligence claim, but reverse the judgment as to the negligence claim and remand this cause

to the district court for further proceedings regarding the negligence claim.

### BACKGROUND

Joaquin Garcia was shot six times by an unknown assailant in the parking lot

adjoining Club Rodeo, one of several night clubs owned by Fifth Club, Inc. Garcia was involved

in an altercation inside the club with a man who allegedly harassed Garcia's dance partner. Fifth Club's bouncers ejected the harasser and his companions. When leaving the club about 45 minutes later, Garcia was shot by an unidentified man. Garcia did not see his assailant's face but was at least 80% sure that the attack was motivated by the earlier incident because he did not know anyone else who would want to shoot him.

Garcia filed this action against Fifth Club for negligence and gross negligence in its failure to provide adequate security at Club Rodeo. He claims that Fifth Club had a duty to protect him from the criminal acts of third parties, which it knew or should have known were likely to occur because of the nature of the business and the recent history of Club Rodeo.

Fifth Club filed a motion for summary judgment asserting that there was no evidence to support duty, breach, or proximate cause because there was no evidence that Fifth Club should have foreseen that an unknown third party would shoot Garcia.

In response, Garcia produced evidence to support his claims of negligence and gross negligence. Fifth Club co-owner Salim Salem testified at his deposition that he knew of such problems at nightclubs generally, at his other clubs, and at Club Rodeo specifically. By affidavit, Garcia's security expert, Edmund Pankau, stated that within the year before the shooting Fifth Club created an atmosphere conducive to violence at Club Rodeo. Within a year before the shooting, Fifth Club received citations for selling alcohol to intoxicated persons at Club Rodeo and for hosting 937 people in a club with a capacity of 477 people. A report of police responses to emergency calls at Club Rodeo listed over twenty incidents—fourteen involving violence—during the year before Garcia's shooting. These incidents included an assault with contact, assault on a police officer,

2

aggravated assault, aggravated robbery, a bomb threat, and auto theft. Pankau stated in his affidavit that, one week before Garcia's shooting, a disturbance occurred involving a man brandishing a gun in the parking lot. Garcia introduced evidence that Club Rodeo's bouncers did not coordinate with outside security guards, who were employed by an independent security company, to ensure that ejected patrons left the premises. He also introduced evidence that Fifth Club required the outside security guards to stay by the door instead of patrolling the parking lot—a requirement that contradicted Fifth Club's agreement with the security company. Fifth Club did not modify these security procedures despite the previous incidents on Club Rodeo's premises.

The trial court granted Fifth Club's summary-judgment motion without stating a particular basis.

## DISCUSSION

Garcia raises two issues on appeal. He asserts that the summary judgment in favor of Fifth Club was improper because he produced more than a scintilla of evidence to support each element of his claims for negligence and gross negligence.

A party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claims on which the nonmovant would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). The burden then shifts to the nonmovant to raise a fact issue on the challenged elements. *Perdue v. Patten Corp.*, 142 S.W.3d 596, 603 (Tex. App.—Austin 2004, no pet.). A no-evidence summary judgment is improper if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential

3

element of the nonmovant's claim on which he would have the burden of proof at trial. *King Ranch*, *Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence supporting a finding rises to a level that would enable reasonable and fair-minded people to differ in their conclusions; less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Id*.

In reviewing a no-evidence summary judgment, we must decide whether the plaintiff has produced any evidence of probative force to raise fact issues on the material questions presented. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). We review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Id*. at 601.

**Negligence**

The essential elements of a negligence claim are a legal duty owed to the plaintiff by the defendant, breach of that duty, and damages proximately caused by that breach. *D. Houston*, *Inc. v. Love*, 92 S.W.3d 430, 454 (Tex. 2002). Fifth Club asserts that there was no evidence to support duty, breach, or proximate cause. We must determine whether Garcia has produced more than a scintilla of evidence as to each element of his claim.

***Duty***

In general, a person has no legal duty to protect another from the criminal acts of a third person. *Timberwalk Apartments*, *Partners*, *Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998). But circumstances may create such a duty:

4

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

Restatement (Second) of Torts § 344 cmt. f. (1965); *see also Mellon Mortgage Co. v. Holder*, 5 S.W.3d 654, 658 (Tex. 1999) (Abbott, J., plurality); *Timberwalk*, 972 S.W.2d at 759 (Spector, J., concurring). Foreseeability requires only that the general danger be foreseeable, not the exact sequence of events that produced the harm. *Timberwalk*, 972 S.W.2d at 756. When the general danger is the risk of injury from criminal activity, the evidence must reveal specific previous crimes on or near the premises in order to establish foreseeability. *Id*. Factors to consider in determining foreseeability are: (1) whether any criminal conduct previously occurred on or near the property; (2) how recently the criminal conduct occurred; (3) how often crime has occurred; (4) how similar the conduct was to the conduct on the property; and (5) what publicity was given to the occurrences to show that the landowner knew or should have known about them. *Id*. at 757. We must analyze these factors together in determining whether criminal conduct was foreseeable. *See id*. at 759.

Applying the *Timberwalk* factors, we conclude that Garcia has produced some evidence of foreseeability. Garcia presented evidence that, within the calendar year preceding his injuries, the police had been summoned over twenty times to Club Rodeo. Fourteen of these calls involved reports of violence, including an aggravated robbery and aggravated assault.

The violent crimes reported at Club Rodeo are sufficiently similar to the shooting of Garcia to be a valid basis for comparison under *Timberwalk*. As the *Timberwalk* court acknowledged, "[a] string of assaults and robberies . . . make the risk of other violent crimes, like murder and rape, foreseeable." *Timberwalk*, 972 S.W.2d at 758. Regarding the proximity factor, the reported crimes occurred on the same Club Rodeo property where Garcia was later shot. *See Timberwalk*, 972 S.W.2d at 757, 759 ("For a risk to be foreseeable, there must also be evidence of criminal activity within the specific area at issue, either on the landowner's property or closely nearby," and looking to crimes committed within one-mile radius). As for recency, the crimes occurred within one year prior to Garcia's shooting. *Id*. at 759 (comparing record of similar crimes committed in preceding year); *Urena v. Western Investments, Inc.*, 122 S.W.3d 249, 255 (Tex. App.—Houston [1st Dist.] 2003, pet. granted) (considering crimes committed within prior three years). Regarding frequency, the fourteen reported violent crimes on Club Rodeo property in the year preceding Garcia's shooting averaged more than one reported violent crime each month. *See Urena*, 122 S.W.3d at 255 (characterizing eight violent crimes over three-year period as "significant number").

Finally, regarding publicity, Fifth Club knew or should have known of these incidents. During his deposition, Fifth Club's owner, when presented with a list of crimes reported on the Club Rodeo property, testified that he was not surprised by the extent of criminal activity reported. In light of this admission, moreover, we reject Fifth Club's argument that the crime reports Garcia produced are not probative under *Timberwalk* because they are not evidence of "actual crimes" but "only calls." *See Timberwalk*, 972 S.W.2d at 752, 759.

6

Applying the *Timberwalk* factors to the summary judgment evidence, which we must view in the light most favorable to Garcia, we conclude that Garcia has raised a genuine issue of material fact regarding whether it was reasonably foreseeable to Fifth Club that its patrons would be subject to violent criminal acts at Club Rodeo, including attempted murder or aggravated assault. Thus, there is a genuine issue of material fact as to whether Fifth Club owed Garcia a legal duty to protect him from the violent criminal acts of third parties. *See Urena*, 122 S.W.3d at 256.

### *Breach*

Garcia's security expert, Edward Pankau stated that Fifth Club breached the standard of care for nightclubs to deter and prevent crime on their premises. He opined that Fifth Club breached this standard of care in several regards, by failing (1) to adequately train its inside bouncers, (2) to ensure adequate communication between its inside staff and the outside security officers, (3) to provide video surveillance of the parking lot, and (4) to allow or require outside security to patrol the parking lot. Garcia has raised a genuine issue of material fact as to the breach of Fifth Club's duty to Garcia.

### *Proximate cause*

Similarly, Garcia has shown that a material fact issue exists as to whether Fifth Club's negligence proximately caused Garcia's injuries. A plaintiff must show that the defendant's act or omission is a proximate cause of his injuries in order to establish a negligence claim. *See Love*, 92 S.W.3d at 454. The elements of proximate cause are foreseeability and cause in fact. *Id*.

Foreseeability means that a person of ordinary intelligence and prudence should have anticipated the dangers that his conduct created for others. *Id.* The foreseeability analysis is the same for duty and proximate cause. *Mellon*, 5 S.W.3d at 659; *Garcia v. Cross*, 27 S.W.3d 152, 157 (Tex. App.—San Antonio 2000, no pet.); *see also Urena*, 122 S.W.3d at 253-54. In our earlier discussion of duty, we determined that Garcia has raised a fact issue regarding foreseeability; that analysis thus shows a fact issue regarding the foreseeability element of proximate cause.

Cause in fact exists when the act or omission was a substantial factor in bringing about the injuries without which the harm would not have occurred. *IHS Cedars Treatment Center of DeSoto*, *Tex.*, *Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004). Cause in fact is not established where the defendant's negligence does no more than furnish a condition which makes the injuries possible. *Id.* In other words, the conduct of the defendant may be too attenuated from the resulting injuries to the plaintiff to be a substantial factor in bringing about the harm. *Id.*

Pankau concluded that Garcia's injuries were causally linked to the failure of bouncers to properly coordinate their efforts with outside security and to generally inadequate security in the parking lot. He opined that the lack of coordination between inside and outside security left the outside security unaware of the potentially heightened risk of violence against guests like Garcia, a victim of harassment by other patrons who were then ejected from the club. Pankau also asserted that the inadequate security in the parking lot—the absence of video surveillance and the prohibition of patrolling the lot—made all patrons more susceptible to crime. This evidence raises an issue of material fact as to whether Fifth Club's acts or omissions were the cause in fact of Garcia's injuries.

8

Fifth Club relies on cases holding that the action of a third party supersedes the effect of any negligence to be the cause in fact of the plaintiff's injuries. *See Palacio v. AON Props., Inc.*, 110 S.W.3d 493, 499 (Tex. App.—Waco 2003, no pet.); *Price v. Ford*, 104 S.W.3d 331 (Tex. App.—Dallas 2003, pet. denied). In *Palacio*, a man was shot in his apartment by people who came to the door at 1 a.m. and asked for him by name. 110 S.W.3d at 495. The court held that the targeted nature of the shooting overcame any general responsibility of the apartment complex for protecting residents. The court held that the fact that Palacio's roommate opened the door to the shooters and Palacio went to meet them showed that they would not have been deterred even had security officers questioned the shooters regarding their intentions. *Id.* at 499. Fifth Club also relies on *Price*, in which a bar patron who was severely beaten for up to three minutes with a pool cue and barstool alleged that the bar negligently provided inadequate security. 104 S.W.3d at 332. The expert testified that the bar's security officers should have responded within 30 seconds to the beating and would thereby have prevented some of the victim's injuries. *Id.* at 333. After a non-jury trial, the trial court awarded damages to the plaintiff. *Id.* at 332. The court of appeals reversed, noting that the expert did not opine that the guards *could* have responded in 30 seconds and merely speculated that the victim's injuries would have been prevented by such timelier intervention. *Id.*

Neither case supports this summary judgment. Unlike in *Palacio*, in which the apartment residents opened the door to the assailants and called the victim into the room, thereby breaking the chain of causation from any omissions by the landlord, *see* 110 S.W.3d at 495, there is no evidence of any intervening acts or omissions breaking the chain of causation from what the evidence, viewed most favorably to Garcia, shows to be Fifth Club's breach of its duty to protect its

9

patrons from violent criminal acts of third parties. Unlike in *Price*, there is no assumption in Garcia's evidence that the attack itself was unpreventable. *See* 104 S.W.3d at 333. Instead, Garcia presented evidence that Fifth Club failed to take steps to protect patrons in the parking lot—*e.g.*, by installing video surveillance or permitting security officers to patrol the parking lot. These causal links concerning the dangers of the parking lot apply whether the shooter was a stranger or a previous attacker. If the shooter was a previous attacker, the failure to communicate the ejection to outside security officers prevented them from knowing that the attackers were specific threats to harm Garcia.

We conclude that Garcia introduced more than a scintilla of evidence supporting each element of his negligence claim. The district court erred by granting a no-evidence summary judgment that he take nothing by his negligence claim.

**Gross negligence**

To review the summary judgment against Garcia's claim of gross negligence, we must determine whether there is any evidence that Fifth Club was consciously indifferent to an extreme risk of harm to its patrons at Club Rodeo. The difference between negligence and gross negligence is one of degree rather than kind. *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex. App.—Austin 1990, writ denied). The definition of gross negligence adds two required elements: "(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk . . . and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994). Gross negligence differs from

ordinary negligence because it requires extreme risk and conscious indifference to that risk. *Id.* at 21. Extreme risk entails a likelihood of serious injury to the plaintiff, while conscious indifference means that the defendant knew about the peril, but its acts or omissions demonstrated that it did not care. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). Circumstantial evidence is sufficient to prove either element. *Id*.

Garcia argues that evidence of Fifth Club's failure to implement changes to its security policies in response to previous violent incidents is some evidence of conscious indifference to an extreme degree of physical risk. He points to the incident report for Club Rodeo—which includes several assaults within a year of Garcia's shooting and a gun-brandishing incident within the previous week. Fifth Club co-owner Salem stated in his deposition testimony that he did not change his security procedures in response to these incidents. Furthermore, the outside security company's manager stated in his deposition that he complained that restricting the outside security to positions at the club entrance kept the security team from adequately securing the parking lot.

But this is not evidence of the severity necessary to prove gross negligence. None of the prior incidents shows an *extreme degree* of risk of serious injury to Garcia. None of the previous incidents at Club Rodeo involved shootings, and there is no evidence that there was any indication that Fifth Club or even Garcia knew of any risk that the ejected harassers (or anyone else) intended to shoot him; Garcia testified that he believed he was shot by the ejected harassers because he could not think of anyone else who would want to shoot him. Although Fifth Club's efforts to protect against known or foreseeable dangers were imperfect and may have been negligent, there is no evidence that Fifth Club was unconcerned about an extreme degree of risk that Garcia would be

11

shot in its parking lot. *See Diamond Shamrock Refining Co. L.P. v. Hall*, No. 02-0566, 2005 Tex. LEXIS 49, at *21 (Tex. Jan. 21, 2005).

The district court did not err by granting the no-evidence summary judgment that Garcia take nothing by his gross negligence claim.

## CONCLUSION

We conclude that Garcia produced some evidence to support each element of his negligence claim, but did not produce any evidence supporting each element of his gross negligence claim. Accordingly, we reverse the take-nothing summary judgment against Garcia's negligence claim and affirm the take-nothing summary judgment against Garcia's gross-negligence claim. We remand the negligence claim for further proceedings in the district court.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed in Part; Reversed and Remanded in Part

Filed: February 3, 2005

12