

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00257-CV

———————————————

CITY OF GRAPEVINE, Appellant

V.

LUDMILLA B. MUNS, RICHARD MUELLER, KARI PERKINS, KEVIN PERKINS, PAMELA HOLT, AND A-1 COMMERCIAL AND RESIDENTIAL SERVICES, INC., Appellees

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-303736-18

Before Sudderth, C.J., and Kerr, J.[1]
Opinion on Rehearing by Justice Kerr

———————————

[1]Justice Lee Gabriel was a member of the original panel but has since retired. Because they agree on the judgment, the two remaining justices decided the case. *See* Tex. R. App. P. 41.1(b).

## OPINION ON REHEARING

After considering Appellant City of Grapevine's motion for en banc reconsideration and Appellees Ludmilla B. Muns, Richard Mueller, Kari Perkins, Kevin Perkins, Pamela Holt, and A-1 Commercial and Residential Services, Inc.'s response, we withdraw our August 5, 2021 opinion and judgment on our own motion and substitute the following.[2]

## I. Introduction

This appeal arises from a challenge to the City of Grapevine's municipal ordinance banning short-term rentals (STRs).[3] Ludmilla B. Muns, Richard Mueller, Kari and Kevin Perkins, Pamela Holt, and A-1 Commercial and Residential Services, Inc. (collectively, "the Homeowners") own residential properties in Grapevine that they lease to others on a short-term basis. In September 2018, the City of Grapevine passed an ordinance expressly prohibiting STRs in the City (the "STR Ordinance"). As a result, the Homeowners sued the City, requesting declarations that the STR Ordinance violates their substantive-due-course-of-law rights, is preempted, and is

---

[2]Our withdrawal of the August 5, 2021 opinion and judgment renders the motion for en banc reconsideration moot. *See Kennamer v. Est. of Noblitt*, 332 S.W.3d 559, 561–62 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (op. on reh'g). Nevertheless, the court has declined to consider this appeal en banc. *See* Tex. R. App. P. 19.1(b), 41.1(a), 41.2(c).

[3]An STR is a home lease for fewer than 30 days.

2

unconstitutionally retroactive. The Homeowners also asserted a regulatory-takings claim and sought injunctive relief.

The City moved for summary judgment and filed a plea to the jurisdiction arguing that the trial court lacks subject-matter jurisdiction over this case because (1) the Homeowners failed to exhaust their administrative remedies; (2) the Homeowners are seeking an advisory opinion on the STR Ordinance because they have not challenged the City's existing zoning ordinance under which STRs are not a permitted use in the first place; (3) the Homeowners' regulatory-takings claim is invalid; and (4) governmental immunity bars the Homeowners' claims for declaratory and injunctive relief. The trial court disagreed and denied the City's motion and plea. The City has filed this interlocutory appeal,[4] contending in five issues that the trial court lacked jurisdiction and thus erred by denying the City's jurisdictional plea.[5] We will reverse and render in part and affirm in part.

## II. Background

In 1982, the City adopted a comprehensive zoning ordinance (the "Zoning Ordinance") that prohibits the use of a building within the City's limits for any purpose except those uses that the ordinance specifically authorizes: "no *use* of any

---

[4]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (providing for interlocutory appeal from the grant or denial of a plea to the jurisdiction filed by a governmental unit).

[5]In addition to the parties' briefs, we have received an amicus brief supporting the Homeowners from the Texas Association of Realtors. *See* Tex. R. App. P. 11.

building, structure[,] or land . . . shall hereafter be established, altered, moved, divided[,] or maintained, in any manner *except as authorized by the provisions of this ordinance.*" *See* Grapevine, Tex., Code of Ordinances, app. D, §§ 1, 6.C (2020) (emphases added). The Zoning Ordinance defines "use" as "the purpose or activity for which a piece of land or its buildings is designed, arranged, or intended, or for which it is occupied or maintained." *Id.* § 12.A.426.

In the two zoning districts in which the Homeowners' properties are located, the Zoning Ordinance authorizes "single-family detached dwellings" as a principal permitted use. *Id.* §§ 15.A.1, 16.A.2. A "single-family detached dwelling" is "an enclosed building having accommodations for and occupied by only one family, which building must of itself meet all the lot area, front yard, side yard, rear yard, height[,] and other zoning requirements." *Id.* § 12.A.394. A "family" is "any number of individuals living together as a single housekeeping unit interdependent upon one another."[6] *Id.* § 12.A.140.

In 2000, the City amended the Zoning Ordinance to allow bed and breakfasts in certain areas of Grapevine.[7] *See* Grapevine, Tex., Ordinance 2000-47 (Apr. 18, 2000). This amendment defined "bed and breakfast facility" as "an accessory use to a single-family dwelling unit in which no more than twelve (12) rooms in the principal

---

[6]The Zoning Ordinance does not define "single housekeeping unit."

[7]None of the Homeowners' properties are in those areas.

residential structure are set aside for guest clients; . . . [the] length of stay of guest clients ranges from one (1) to thirty (30) days; and the owner/operator of the principal structure resides on-site." *Id.* sec. 2.A (codified at Grapevine, Tex., Code of Ordinances, app. D, § 12.A.29a). The amendment excluded from "[b]ed and breakfast homestay[s] . . . uses such as motels, hotels, community residential homes, boarding or lodging houses, apartment dwellings, guest cottages or single-family dwelling transient rental." *Id.* The amendment did not define "single-family dwelling transient rental." *See id.*

The City contends that because the Zoning Ordinance does not expressly allow STRs, they have never been a permitted use in the City. But for several years before the STR Ordinance's 2018 passage, the Homeowners had rented out their Grapevine properties on a short-term basis without interference from the City. In fact, when some of the Homeowners contacted the City's Planning and Zoning Department to ask about any restrictions on STRs, City employees told them that the City had no restrictions, regulations, or permit requirements for STRs. Based on these representations and the existing Zoning Ordinance, the Homeowners invested money to purchase or to improve Grapevine homes for use as furnished STRs.[8] Some of the

---

[8]According to the Homeowners, none of them rent out individual rooms, have employees staffing their properties, maintain a front desk or concierge service, or otherwise operate a business on their STR properties.

Homeowners paid short-term-occupancy taxes to the City, without incident and with the City apparently happy to accept them.[9]

More recently, however, Grapevine's STR market has exploded because websites like Airbnb, Homeaway, and Vrbo have made it easier for property owners to market their STRs to prospective renters. For some permanent residents who live near STRs, this uptick has created problems such as noise disturbances, increased vehicle traffic, and street-parking problems. For the City's police department, STRs have generated increased complaints from residents involving STR guests: criminal mischief, domestic disputes, parking violations, alarm calls, and noise disturbances. But the City has never issued a citation for short-term renting in violation of the Zoning Ordinance.[10]

Because of the increase in STRs and the associated complaints, the Grapevine City Council began a ten-month study and observation period in November 2017 concerning how STRs affect residential neighborhoods. In early September 2018, the city council held a public hearing on the STR issue. At the beginning of the

---

[9]Homeowner Holt, for example, has paid roughly $32,000 in such taxes to the City, which the City has kept. At the public-hearing portion of the city-council meeting at which the City adopted the STR Ordinance, one STR owner testified—to "hopefully get a little humor in this room tonight," as he said—"I have been paying hotel occupancy taxes for over a year and a half, and I don't think you guys have ever sent those back to me, so just saying."

[10]*Cf. Zaatari v. City of Austin*, 615 S.W.3d 172, 189 (Tex. App.—Austin 2019, pet. denied) (noting that "the City has not initiated a single proceeding to remove a property owner's short-term rental license in response to complaints about parties").

hearing, the City's Assistant Attorney, Matthew Boyle, stated that—despite what the Homeowners had been led to believe—the Zoning Ordinance had always prohibited STRs:

> And at the outset as to where we are now, I want to make it clear that the short-term rentals are not [a] permitted use in the [C]ity of Grapevine and they have never been listed as a permitted use under the zoning ordinance and as such they are currently and have been since at least 2000 prohibited in the [C]ity of [G]rapevine.

After hearing citizens' comments, the city council passed the STR Ordinance, which (1) defines a "single-family dwelling transient rental" as "[t]he rental or offer for rental of any dwelling or any portion of a dwelling for a period of less than 30 days"[11] and (2) expressly prohibits them in the City. Grapevine, Tex., Ordinance No. 2018-065 (Sept. 4, 2018) (codified at Grapevine, Tex., Code of Ordinances, ch. 14, art. VI, §§ 14-150, -151). According to the City, the STR Ordinance did not really amend the Zoning Ordinance but simply clarified and affirmed that the Zoning Ordinance did not allow STRs.

Immediately after the STR Ordinance's enactment, Scott Williams, the City's Building Official and Director of Development Services, prepared and mailed identical notice letters to all Grapevine's known STR owners and operators. The notice—which each of the Homeowners received—stated,

---

[11]Single-family dwelling transient rentals do not include traditional residential leaseback arrangements associated with some real-estate transactions. *See* Grapevine, Tex., Code of Ordinances, ch. 14, art. VI, § 14-150.

7

Be advised that short term/transient rentals ("STR's") are prohibited in the City of Grapevine. STR's are not listed as a permitted use in any Zoning classification in the City, and as such, are not allowed. . . . Following the [September 2018] Public Hearing, the City Council approved [the STR Ordinance] that affirmed the prohibition on STR's in Grapevine. Single family dwelling transient rentals (aka STR's) are defined as "the rental or offer for rental of any dwelling or any portion of a dwelling for a period of less than 30 days.["] The complete Ordinance is attached.

The notice informed STR owners that they would be allowed a 45-day conditional grace period to allow them a "reasonable time to honor commitments that have already been made, and/or to market their home(s) for other, permitted uses." The notice warned that after the grace period expired, "any person found to be in violation of the Zoning Ordinance regarding STR's [would] be issued a citation, and upon conviction thereof [would] be fined in a sum not to exceed $2,000.00." The notice further warned that ordinance violations during the conditional grace period would "result in an order to immediately cease the STR" and would "result in prosecution as described above."[12]

---

[12]That this forward-looking communication informed the recipients of what *might* happen to them, and thus was an inchoate suggestion of possible future enforcement, is consistent with Boyle's September 2018 remarks to the City Council in response to a councilmember's asking, during the nonpublic discussion, whether "there will be a communication and a period of time to help the people that have these [STRs] to sort of understand that we are *going to enforce* a law that has been on the books for a while and so that there is some communication?" [Emphasis added.] Boyle assured the council that "the ordinance itself includes a clause directing staff to do just that[,] . . . [w]hich is an education first campaign followed then by an enforcement campaign." The meeting minutes also show that "[c]ouncil directed staff to determine an appropriate grace period for education and enforcement."

In October 2018, the Homeowners sued the City, seeking declarations that the STR Ordinance is unconstitutional because it (1) is a regulatory taking of their property without compensation;[13] (2) violates their due-course-of-law rights under the Texas Constitution;[14] (3) is impliedly preempted by Chapter 156 of the Texas Tax Code alone or in combination with Chapter 92 of the Texas Property Code;[15] and (4) deprives the Homeowners of their vested rights to continue their STRs, in violation of Chapter 245 of the Texas Local Government Code.[16] The Homeowners also sought to enjoin the City from enforcing the STR Ordinance.

The trial court granted the Homeowners' request for temporary injunctive relief.[17] The City filed a plea to the jurisdiction and brief in support with attached evidence challenging the Homeowners' pleadings and the existence of jurisdictional facts, arguing that

- the Homeowners had failed to allege a justiciable controversy because the STR Ordinance was not a "new ban" on STRs—that is, the unchallenged existing

---

[13]*See* U.S. Const. amend. V; Tex. Const. art. I, § 17(a).

[14]*See* Tex. Const. art. I, § 19.

[15]*See id.* art. XI, § 5(a); Tex. Prop. Code Ann. §§ 92.001–.355 ("Residential Tenancies"); Tex. Tax Code Ann. §§ 156.001–.252 ("Hotel Occupancy Tax").

[16]*See* Tex. Loc. Gov't Code Ann. §§ 245.001–.007 ("Issuance of Local Permits").

[17]The Homeowners state in their brief that the trial court granted them temporary injunctive relief, although the trial court's order is not in the record.

9

Zoning Ordinance already banned STRs—and thus a ruling on the STR Ordinance would not change anything;

- the Homeowners had failed to exhaust their administrative remedies under Chapter 211 of the Texas Local Government Code because they did not appeal to the City's Board of Adjustment the City's determination in the notice that the Zoning Ordinance already prohibited STRs;

- governmental immunity bars the Homeowners' claims, and Grapevine's governmental immunity had not been waived; and

- the Homeowners' request for declaratory relief was invalid because it mirrored their takings claim.

The trial court denied the City's plea, and the City did not appeal.

The Homeowners amended their petition to seek additional declaratory relief—that the STR Ordinance is unconstitutionally retroactive[18]—and to add a regulatory-takings claim for compensation or for a specific recoupment period.[19] In response, the City moved for summary judgment, arguing in relevant part that the Homeowners' suit should be dismissed for lack of subject-matter jurisdiction because the Homeowners' "causes of action amount to nothing more than a request for an advisory opinion" and because they failed to exhaust their administrative remedies. The City further argued that the Homeowners' takings claim failed as a matter of law and that their requests for declaratory relief were invalid because the STR Ordinance was not retroactive in that it did not take away or impair the Homeowners' vested

---

[18] *See* Tex. Const. art. I, § 16.

[19] *See* U.S. Const. amend. V; Tex. Const. art. I, § 17(a).

rights and because the Homeowners failed to cite a state law that clearly preempted the STR Ordinance.

Contemporaneously with filing its summary-judgment motion, the City filed an amended jurisdictional plea that reurged the grounds from its original plea. The plea also incorporated its summary-judgment motion.

The day before the hearing on the amended jurisdictional plea and the summary-judgment motion, the Homeowners nonsuited their regulatory-takings and Chapter 245 requests for declaratory relief. After a hearing, the trial court denied the City's amended jurisdictional plea and its summary-judgment motion.

The City has appealed, claiming that the trial court erred by denying its amended jurisdictional plea.[20]

---

[20]The Homeowners do not suggest that the City's earlier jurisdictional plea limits our jurisdiction to review jurisdictional challenges raised in the City's amended plea that reurge or overlap with those raised in the City's original plea. *See City of Houston v. Est. of Jones*, 388 S.W.3d 663, 666–67 (Tex. 2012) (holding that an appellate court does not have interlocutory jurisdiction over an amended plea to the jurisdiction that was substantively a motion to reconsider the original plea because the amended plea did not assert a new immunity ground). Because the Homeowners amended their petition to add additional claims after the trial court denied the City's original plea and because the amended plea relied on additional evidence, we conclude that the amended plea is sufficiently different from the original one. *See City of Magnolia 4A Econ. Dev. Corp. v. Smedley*, 533 S.W.3d 297, 301 (Tex. 2017) (explaining that "[u]nder *Jones*, the touchstone of our analysis [is] whether the later plea to the jurisdiction [is] a new and distinct motion or a mere motion to reconsider").

### III. Governmental Immunity and Standard of Review

Unless the state consents to suit, sovereign immunity deprives a trial court of jurisdiction over lawsuits against the state or certain governmental units. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) (op. on reh'g). Cities are political subdivisions of the state and, absent waiver, are similarly entitled to governmental immunity. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (op. on reh'g).

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights ISD v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). Whether a court has subject-matter jurisdiction is a legal question, and we review de novo a trial court's ruling on a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 226, 228.

When a plea challenges the pleadings, we determine if the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction. *Id.* at 226. We construe the pleadings liberally in the plaintiff's favor and look to the plaintiff's intent. *Id.* If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect in jurisdiction, the plaintiff should be given the opportunity to amend. *See id.* at 226–27. But if the pleadings affirmatively negate the existence of jurisdiction altogether, then a jurisdictional plea may be granted without allowing a (necessarily futile) chance to amend. *See id.* at 227.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, our review mirrors that of a traditional summary-judgment motion. *Mission Consol. ISD v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *see* Tex. R. Civ. P. 166a(c). We take as true all evidence favorable to the plaintiff, and we indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Miranda*, 133 S.W.3d at 228. The defendant carries the initial burden of establishing that the trial court lacks jurisdiction. *Garcia*, 372 S.W.3d at 635. If the defendant meets that burden, the plaintiff must then demonstrate that a disputed material fact exists regarding the jurisdictional issue. *Id.* If a fact issue exists, the trial court should deny the plea. *Id.* But if the evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the plea must be granted as a matter of law. *See id.*

Overarching all these principles is that "the plea should be decided without delving into the merits of the case." *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

### IV. Failure to Exhaust Administrative Remedies

In its first issue, which if successful would end the Homeowners' lawsuit right off the bat, the City argues that the trial court erred by not dismissing the Homeowners' claims altogether because they failed to exhaust their administrative remedies by not appealing Boyle's and Williams's decisions that the existing Zoning Ordinance already prohibited STRs. The City contends that Chapter 211 of the Texas Local Government Code and the Zoning Ordinance required the Homeowners to appeal these decisions to the City's Board of Adjustment before suing the City.

13

According to the City, because the Homeowners did not do so and thus failed to exhaust their administrative remedies, the trial court lacks subject-matter jurisdiction over all the Homeowners' claims.

## A. Applicable Law

The Local Government Code authorizes a municipality to promulgate zoning regulations and to establish a board of adjustment with the power to "hear and decide an appeal that alleges error in an order, requirement, decision, or determination made by an administrative official in the enforcement of [zoning ordinances]." Tex. Loc. Gov't Code Ann. § 211.009(a)(1); *see id.* §§ 211.003, .008; *see also* Grapevine, Tex., Code of Ordinances, app. D, § 68.H.1. Any person aggrieved by an administrative official's decision may appeal to the board of adjustment within a reasonable time as determined by the board's rules.[21] Tex. Loc. Gov't Code Ann. § 211.010(a)(1), (b). Consistent with the Local Government Code, the Zoning Ordinance provides that an appeal to the City's board of adjustment may be taken by "any person aggrieved" by "any decision of the building inspector or other administrative officer of the city relative to the zoning ordinance" and that appeal must "be taken within 15 days after

---

[21]The legislature amended Local Government Code Section 211.010 effective September 1, 2019, nearly a year after Boyle's statements at the September 2018 council meeting and Williams's 2018 letter. *See* Act of May 22, 2019, 86th Leg., R.S., ch. 820, H.B. 2497, §§ 2, 4. We cite the version that was in effect at the time of those events. *See id.* § 3(b).

14

the date of the decision of the building inspector or other administrative officer has been rendered." Grapevine, Tex., Code of Ordinances, app. D, § 68.G.

The adjustment board "may reverse or affirm, in whole or in part, or modify the administrative official's order, requirement, decision, or determination from which an appeal is taken and make the correct order, requirement, decision, or determination, and for that purpose the board has the same authority as the administrative official." Tex. Loc. Gov't Code Ann. § 211.009(b); *see* Grapevine, Tex., Code of Ordinances, app. D, § 68.I. An aggrieved person may then appeal the board of adjustment's decision by filing, within ten days of that decision, a verified petition in a district court, county court, or county court at law stating that the board's decision "is illegal in whole or in part." Tex. Loc. Gov't Code Ann. § 211.011(a)(1), (b).

Generally, a party must exhaust the administrative remedies available under Chapter 211 of the Local Government Code before seeking judicial review of an administrative official's decision. *See City of Grapevine v. CBS Outdoor, Inc.*, No. 02-12-00040-CV, 2013 WL 5302713, at \*4 (Tex. App.—Fort Worth Sept. 19, 2013, pet. denied) (mem. op. on reh'g) (citing cases). The administrative-exhaustion requirement compels a party to "pursue all available remedies within the administrative process before seeking judicial relief." *Lazarides v. Farris*, 367 S.W.3d 788, 798 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (quoting *Larry Koch, Inc. v. Tex. Nat. Res. Conservation Comm'n*, 52 S.W.3d 833, 839 (Tex. App.—Austin 2001, pet. denied)).

15

"Unless the party has exhausted all administrative remedies, the trial court lacks subject[-]matter jurisdiction." *CBS Outdoor*, 2013 WL 5302713, at *4 (citing *City of Paris v. Abbott*, 360 S.W.3d 567, 572 (Tex. App.—Texarkana 2011, pet. denied)); *see* Tex. Gov't Code Ann. § 311.034 ("Statutory prerequisites to a suit . . . are jurisdictional requirements in all suits against a governmental entity.").

**B. Analysis**

Here, the City contends that although the Homeowners' suit has been brought as a constitutional challenge to the 2018 STR Ordinance, the source of their complaint is the City's determination that the Zoning Ordinance has always prohibited STRs. Thus, it argues, because the Homeowners were aggrieved by Williams's and Boyle's decisions to that effect, the Homeowners were required to appeal those decisions to the City's board of adjustment before suing the City. The Homeowners acknowledge that they did not appeal to the board of adjustment but counter that neither Boyle's comments during the city-council meeting nor Williams's statements in the notice triggered Section 211.011's administrative procedures. The Homeowners further contend that they were not required to exhaust their administrative remedies before filing suit because they are challenging the STR Ordinance's constitutionality, which the board of adjustment lacked the authority to determine. *See Brennan v. City of Willow Park*, 376 S.W.3d 910, 916 (Tex. App.—Fort Worth 2012 pets. denied) (identifying exception to exhaustion-of-administrative-remedies requirements "when certain constitutional issues are involved").

16

In the trial court, the City had the initial burden of establishing that the Homeowners had to exhaust their administrative remedies but failed to do so. *See Garcia*, 372 S.W.3d at 635; *Risoli v. Bd. of Adjustment of City of Wimberley*, No. 03-17-00385-CV, 2017 WL 4766724, at *5 (Tex. App.—Austin Oct. 20, 2017, no pet.) (mem. op.). As noted, the board of adjustment's authority includes the power to hear and to decide an appeal that alleges error in a decision or determination made by an administrative official in the enforcement of a zoning ordinance. Tex. Loc. Gov't Code Ann. § 211.009(a)(1); *see* Grapevine, Tex., Code of Ordinances, app. D, § 68.H.1.

The Local Government Code does not define "enforcement." Our objective in construing the Local Government Code is to discern the legislature's intent. *See Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018). In doing so, we look first to the plain meaning of the text, using any definitions provided. *See id.* When, as here, no definition is given, we give a word its common, ordinary meaning. *See id.* And to determine a term's common, ordinary meaning, we look to dictionary definitions. *See id.*

In ordinary usage, "enforcement" is the "act or process of compelling compliance with a law, mandate, command, decree, or agreement." *Enforcement*, Black's Law Dictionary (11th ed. 2019). "Compel" means "[t]o cause or bring about by force, threats, or overwhelming pressure." *Compel*, Black's Law Dictionary (11th ed. 2019). Assuming that Boyle's and Williams's statements that the Zoning Ordinance

17

has always prohibited STRs rose to the level of being decisions or determinations made by an administrative official, building inspector, or other administrative officer, those decisions or determinations were not "made in the enforcement" of the Zoning Ordinance because they were not made in the act or process of compelling compliance with the ordinance. Both statements are purely informational,[22] essentially telling the Homeowners how the City had recently decided to interpret the Zoning Ordinance, with Williams's notice detailing the penalties for violating it and stating that the City would start enforcing the Zoning Ordinance 45 days in the future, even though the City had not enforced it thus far.[23]

---

[22]The trial court viewed Williams's letter the same way, stating during a hearing that the letter was "informational" and questioning the City's attorney, "Where does it say that your conduct is in violation of the ordinance? . . . Where does it say that the City has determined that you are in violation of the ordinance and you are being advised to stop?" The trial court pressed further, remarking that the Homeowners "didn't fail to exhaust if they weren't given a -- a ruling, were they? . . . I don't see in that letter, based upon my review, where a particular homeowner is being told: You are in violation of this provision. . . . This is informational. Where are they told, 'You,' this homeowner, 'are doing this activity in violation of this ordinance'?" The trial court made several more runs at this point, including asking the City's attorney, "[H]ow are [the Homeowners] supposed to know they're aggrieved by [a decision or a determination of a building official] if someone hasn't said that it's your -- 'You're in violation'?" The City's attorney responded with his view that the very fact of being "here in the middle of this lawsuit" was a "clear enough message . . . that they were aggrieved by the decision." The trial court rejected that argument out of hand: "No. It can certainly be *fear of being held in violation of it*." [Emphasis added.]

[23]Indeed, as we noted earlier, City employees had explicitly assured some of the Homeowners that the City had no restrictions, regulations, or permit requirements for STRs, and the City took in and kept short-term-occupancy taxes proffered by some of the Homeowners. It is not a stretch to wonder whether the reason the City insisted that the STR Ordinance was neither new nor an amendment to the Zoning

18

The City devotes most of its motion for en banc reconsideration to challenging our exhaustion-of-remedies holding. Specifically, the City argues that our holding in *CBS Outdoor* should have compelled us to reverse because "[t]he facts are almost identical." We disagree. In that case, CBS Outdoor made a written request to the City for permission to shift the face of its billboard. *CBS Outdoor*, 2013 WL 5302713, at *1. The Assistant City Attorney notified CBS Outdoor by letter that its request was denied and that the sign was "currently nonconforming under the applicable City codes" and could not "be moved, altered, or adjusted under the current conditions." *Id.* at *2. We concluded that the City's decision that CBS Outdoor could not move, alter, or adjust its sign triggered Section 211.011's administrative procedures. *See id.* at *5. That is, by altering the billboard (which CBS later did) without first appealing the City's decision to the board of adjustment, CBS Outdoor ignored the no-alteration decision at its administrative-exhaustion peril. Here, in contrast, as we have explained, the City's statements were informational, not actual determinations made in the act or process of compelling a property owner's compliance with a City ordinance.[24]

Ordinance—Boyle immediately corrected one councilmember who called it an "amendment," saying that the STR Ordinance "is not an amendment to the zoning ordinance in any[ ]way"—was to undercut any possible retroactivity and takings claims.

[24]At the hearing we have already quoted from, in discussing the notion that the Homeowners disagreed with the City's foundational position that the Zoning Ordinance had always prohibited STRs, the trial court asked two questions that we find sensible: "But why should [the Homeowners] challenge something that they

Moreover, we agree with the Homeowners that they were not required to exhaust their administrative remedies before filing suit because their claims in this suit are challenging the STR Ordinance's constitutionality and would not have been mooted by an administrative decision. Generally, administrative bodies do not have authority to rule on the constitutionality of statutes and ordinances. *See City of Dallas v. Stewart*, 361 S.W.3d 562, 568 (Tex. 2012) (op. on reh'g) (citing *Cent. Power & Light Co. v. Sharp*, 960 S.W.2d 617, 618 (Tex. 1997)). "The supreme court has held that administrative agencies lack the ultimate power of constitutional construction." *City of Richardson v. Bowman*, 555 S.W.3d 670, 686 (Tex. App.—Dallas 2018, pet. denied) (citing *Stewart*, 361 S.W.3d at 568). "No Texas agency has been granted the power to engage in constitutional construction, and any such attempt by the legislature to vest such power would raise serious and grave issues of a separation of powers violation." *Id.* (quoting *Stewart*, 361 S.W.3d at 568). The adjustment board thus lacked the power to declare whether either the Zoning Ordinance or the STR Ordinance violates the Texas Constitution.

As the City points out, though, just because a claim is based on the Texas Constitution does not necessarily mean that a plaintiff can proceed directly to filing suit without first exhausting his administrative remedies. *See Garcia v. City of Willis*, 593 S.W.3d 201, 210–12 (Tex. 2019). Claims based on the Texas Constitution are not

contend didn't prohibit it in the first place?" and "So if some City official announces an interpretation of a zoning ordinance, that's a trigger to challenge it?"

"globally exempted" from "statutory exhaustion-of-remedies requirements." *Clint ISD v. Marquez*, 487 S.W.3d 538, 552 n.9 (Tex. 2016). If the administrative proceeding could have obviated the need for a plaintiff to file suit because the proceeding had the potential to moot that claim, then the plaintiff must have pursued his administrative remedies. *See, e.g., Garcia*, 593 S.W.3d at 211–12; *Watson v. City of Southlake*, 594 S.W.3d 506, 522 (Tex. App.—Fort Worth 2019, pet. denied).

Here, it is immaterial whether the administrative proceeding could have resolved the Homeowners' claims, so long as the adjustment board could "render relief that would have mooted those claims." *Watson*, 594 S.W.3d at 522 (citing *Garcia*, 593 S.W.3d at 211–12). In other words, "[t]he question . . . is not whether an administrative hearing could have resolved *all* of [the plaintiff's] claims, constitutional or otherwise." *Garcia*, 593 S.W.3d at 211. The proper inquiry is whether the administrative proceeding—here, appealing to the adjustment board—could have rendered the Homeowners' claims moot. *See id.*; *Stewart*, 361 S.W.3d at 579; *see also City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 236–37 (Tex. 2011) (holding that property owner was barred from bringing constitutional-takings claim where owner failed to pursue administrative remedy that could have mooted claim through return of property or just compensation).

Here, Boyle's statement and Williams's letter informed the Homeowners that the Zoning Ordinance has always prohibited STRs. Although the meaning of the Zoning Ordinance is a component of the Homeowners' claims, the target of their suit

21

is the STR Ordinance's express STR ban. Had the Homeowners appealed Boyle's and Williams's interpretation of the Zoning Ordinance to the adjustment board, the board's decision regarding that interpretation would not have obviated the need for the Homeowners to bring their takings claim and constitutional challenges to the STR Ordinance because the STR Ordinance would have remained in place.[25] In other words, a board determination that Boyle and Williams were correct—that is, that STRs are not a permitted use under the Zoning Ordinance—would not have avoided the need for the Homeowners to bring their takings claim and their challenge to the STR Ordinance's constitutionality. The same would be true if the board had determined that Boyle and Williams were wrong—that STRs *are* a permitted use under the Zoning Ordinance—because the STR Ordinance expressly banning STRs would still be in place.[26] Accordingly, we overrule the City's first issue.

---

[25]As noted, the board of adjustment's authority includes the power to "hear and decide an appeal that alleges error in an order, requirement, decision, or determination made by an administrative official in the enforcement of" a zoning ordinance. Tex. Loc. Gov't Code Ann. § 211.009(a)(1). In exercising that authority, the adjustment board "may reverse or affirm, in whole or in part, or modify the administrative official's order, requirement, decision, or determination from which an appeal is taken and make the correct order, requirement, decision, or determination, and for that purpose the board has the same authority as the administrative official." *Id.* § 211.009(b). The City does not contend that the adjustment board could have done away with the STR ban altogether.

[26]The City does not contend that the Homeowners were required to appeal Williams's statement that the STR Ordinance simply affirmed the Zoning Ordinance's prohibition on STRs. But even if the City had so argued, we do not see how the adjustment board's review of that statement could have obviated the need for the

22

## V. The Zoning Ordinance

Because whether the existing Zoning Ordinance allowed STRs informs our analysis of the City's remaining issues, we must address whether STRs were in fact allowed in the City before the STR Ordinance expressly banned them.

We construe ordinances and statutes using the same rules. *Bd. of Adjustment of the City of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002); *Town of Annetta S. v. Seadrift Dev., L.P.*, 446 S.W.3d 823, 825 (Tex. App.—Fort Worth 2014, pets. denied). The construction of an ordinance is thus a legal question. *Powell v. City of Houston*, 628 S.W.3d 838, 842 (Tex. 2021). Our objective in construing the Zoning Ordinance is to discern the City's intent. *See Town of Annetta S.*, 446 S.W.3d at 825. "In giving effect to the . . . ordinance as a whole, we should not assign a meaning to a provision that would be inconsistent with other provisions of the . . . ordinance." *Id.* (citing *Wende*, 92 S.W.3d at 430). Ordinances regulating land use are in derogation of the common law and are thus strictly construed against the municipality and in the landowner's favor. *See id.* at 825–26; *City of Kermit v. Spruill*, 328 S.W.2d 219, 223 (Tex. App.—El Paso 1959, writ ref'd n.r.e.); *Thomas v. Zoning Bd. of Adjustment of City of Univ. Park*, 241 S.W.2d 955, 957 (Tex. App.—Eastland 1951, no writ).

As noted, the zoning districts in which the Homeowners' properties are located allow "single-family detached dwellings" as a principal permitted use. *See* Grapevine,

Homeowners' takings claim and claims challenging the STR Ordinance's constitutionality.

23

Tex., Code of Ordinances, app. D, §§ 15.A.1, 16.A.1. A "single-family detached dwelling" is "an enclosed building having accommodations for and occupied by only one family," and a "family" is "any number of individuals living together as a single housekeeping unit interdependent upon one another." *Id.* §§ 12.A.394, 12.A.140.

The City argues that STRs do not fit within the definition of a "single-family detached dwelling" because STRs are not occupied by a single family but are occupied by groups of people—some family, some not—in quick succession. Relying on out-of-state cases, the City further argues that STR tenants—"whose stays can be as temporary as one day"—"are not living at the properties as a single housekeeping unit" because the phrase "single housekeeping unit" is a "commonly used term in zoning ordinances[,] and courts throughout the country agree that the term requires an element of permanency and stability, rather than transiency."[27] But we are of

---

[27]*See, e.g.*, *Plan. & Zoning Comm'n of the Town of Westport v. Synanon Found., Inc.*, 216 A.2d 442, 443 (Conn. 1966) (concluding that "ever-changing" group of individuals who slept, cooked, ate, worked, and carried on activities in a dwelling did not come within the meaning of the word "family"); *Open Door Alcoholism Program, Inc. v. Bd. of Adjustment of City of New Brunswick*, 491 A.2d 17, 22 (N.J. Sup. Ct. 1985) ("[I]n order for a group of unrelated persons living together as a single housekeeping unit to constitute a single family in terms of a zoning regulation, they must exhibit a kind of stability, permanency and functional lifestyle which is equivalent to that of the traditional family unit."); *City of White Plains v. Ferraioli*, 313 N.E.2d 756, 758 (N.Y. Ct. App. 1974) ("So long as the group home bears the generic character of a family unit as a relatively permanent household, and is not a framework for transients or transient living, it conforms to the purpose of the ordinance."); *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 899 (Pa. 2019) (noting that the Pennsylvania Supreme Court has adopted the common definition of "single housekeeping unit," used by courts throughout the country, as requiring the person or persons residing in the home to function as a family and to be "sufficiently stable and permanent" and

course not bound by out-of-state authorities, and the City cites no Texas cases that directly support this interpretation of "single housekeeping unit."

As the Zoning Ordinance defines the word, "family" does not require that the people living as a "single housekeeping unit" be related by blood or marriage. Moreover, neither "single-family detached dwelling" nor "living together as a single housekeeping unit interdependent upon one another" has any occupancy-duration requirements, and neither phrase addresses leasing, whether short- or long-term. We decline to add occupancy-duration restrictions when none are there. *Cf. Schack v. Prop. Owners Ass'n of Sunset Bay*, 555 S.W.3d 339, 350 (Tex. App.—Corpus Christi–Edinburg 2018, pet. denied) (holding that phrase "living as a single household unit" in a restrictive covenant did not prohibit short-term rentals). We thus conclude that the term "single-family detached dwelling" as defined in the Zoning Ordinance does not prohibit STRs in the two zoning districts in which the Homeowners' properties are located, so long as the renters meet the Zoning Ordinance's definition of "family." *See id.*

The City next contends that an STR is more in line with a "business service," which is not a permitted "accessory use" in either of the two zoning districts. Grapevine, Tex., Code of Ordinances, app. D, §§ 15.B, 16.B. An "accessory use" is "a

_____

not "purely transient" and holding that, by defining "family" as requiring "a single housekeeping unit," the ordinance "clearly and unambiguously excluded, in pertinent part, purely transient uses of property in Zoning District A").

use subordinate to and incidental to the principal use." *Id.* § 12.A.2a. A "principal use" is "a use which, in comparison with another use occurring on the same property, has the greatest effective producing power." *Id.* § 12.A.327. Relevant here, a "business service" is "a commercial use, other than retail sales and professional services, devoted to . . . [t]he providing of temporary abodes for transient persons, such as a hotel or motel." *Id.* § 12.A.36(c). "Commercial" in turn means "any business, other than a customary home occupation or manufacturing business, which involves the exchange of goods or services for *the remuneration of a person occupying the premises upon which the transaction or part thereof takes place.*" *Id.* § 12.A.64 (emphasis added). Because the Homeowners do not simultaneously occupy the STRs, their STRs are not a commercial use and thus not a "business service."

The City also argues that the city council's amendment to the Zoning Ordinance in 2000 to allow bed and breakfasts as permitted accessory uses for "single-family dwelling units" but to specifically exclude "single-family dwelling transient rentals" from the definition of bed and breakfasts indicated that the City did not intend for STRs to be included within the definition of "single-family detached dwelling." The City contends that although the phrase "single-family dwelling transient rentals" was undefined, its meaning is "clearly different" from that of "a single-family detached dwelling." The Zoning Ordinance's language, however, does not support this interpretation. If the City intended to exclude "single-family dwelling

26

transient rental" from the definition of "single-family detached dwelling," it could have amended the Zoning Ordinance to reflect that intent.

Accordingly, we conclude as a matter of law that STRs were a permitted use under the existing Zoning Ordinance.

## VI. Advisory Opinion

In its second issue, the City argues that any order declaring the STR Ordinance unconstitutional and enjoining the City from enforcing it would be an advisory opinion because the existing Zoning Ordinance does not allow STRs. Because the Homeowners have not directly challenged the Zoning Ordinance, so the argument goes, any order declaring the STR Ordinance unconstitutional and enjoining its enforcement would be advisory because the City could continue to enforce its STR ban through the Zoning Ordinance. In other words, the declaratory and injunctive relief the Homeowners seek—that the STR Ordinance is unconstitutional—would not affect the Homeowners' ability to operate STRs in the City because STRs are not a permitted use under the Zoning Ordinance. For this reason, the City contends that the trial court lacks subject-matter jurisdiction over the Homeowners' claims.

Subject-matter jurisdiction requires that the case be justiciable. *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994). A "justiciable controversy" is a real and substantial controversy involving a genuine conflict of tangible interests and not just a theoretical dispute. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). "[F]or a controversy to be justiciable, there must be a real controversy between the

27

parties that will be actually resolved by the judicial relief sought." *Gomez*, 891 S.W.2d at 245. Without a justiciable controversy, a trial court must dismiss a case for lack of subject-matter jurisdiction. *Transp. Ins. v. W.H. Cleaners, Inc.*, 372 S.W.3d 223, 227 (Tex. App.—Dallas 2012, no pet.).

Here, the Homeowners admit that they are not directly challenging the Zoning Ordinance: "It is quite true that the Homeowners contend that the prior ordinances did not ban STR's. But that is not the *objective* of their suit; it is a required element of their constitutional claims." The Homeowners contend that, to a certain extent, whether they succeed on their claims hinges on whether the Zoning Ordinance allowed STRs. We agree with the Homeowners that their retroactivity, due-course-of-law, and takings claims turn on whether the existing Zoning Ordinance allowed STRs. Because we have determined that it did, the Homeowners' failure to expressly challenge the Zoning Ordinance does not render their suit a request for an advisory opinion.[28] We thus overrule the City's second issue.

## VII. Article I, Section 17 of the Texas Constitution (Regulatory Takings)

In its third issue, the City asserts that the trial court erred by not dismissing the Homeowners' regulatory-takings claim under the Texas Constitution.[29] Through that

---

[28]In other words, because the Homeowners' argument partially hinges on—and thus necessarily includes—the proposition that the Zoning Ordinance allows STRs, we cannot ignore it.

[29]A regulatory-takings claim is a type of inverse-condemnation claim. *Edwards Aquifer Auth. v. Bragg*, 421 S.W.3d 118, 134 (Tex. App.—San Antonio 2013, pets.

claim, the Homeowners seek monetary compensation or a "specific recoupment period." *See* Tex. Const. art. I, § 17(a) ("No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made . . . ."). Citing the Supreme Court's opinion in *Penn Central* and the Texas Supreme Court's *Sheffield* opinion, the Homeowners pleaded that the STR Ordinance unreasonably interferes with their right to use and enjoy their properties by eliminating their ability to generate short-term rental income from their properties and interfering with their reasonable investment-backed expectations in buying and improving their properties to use as STRs. *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S. Ct. 2646, 2659 (1978); *Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 672 (Tex. 2004). The City argues that the regulatory-takings claim is invalid because (1) the Homeowners have no vested right to a particular use of their property; (2) the City's action did not cause a taking; and (3) the value of the Homeowners' properties has increased. The City thus contends that its immunity is not waived. *See Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 491 (Tex. 2012) (holding that trial court did not have jurisdiction over dispute because property owner did not plead and prove sufficient facts to establish a viable inverse-condemnation

---

denied) (op. on reh'g). "A compensable regulatory taking can occur when [the] government[ ] . . . imposes restrictions that either deny a property owner all economically viable use of his property or unreasonably interfere[ ] with the owner's right to use and enjoy the property." *City of Dallas v. Blanton*, 200 S.W.3d 266, 271 (Tex. App.—Dallas 2006, no pet.).

29

claim); *City of Carrollton v. Hamrla*, No. 02-15-00119-CV, 2016 WL 93031, at *2 (Tex. App.—Fort Worth Jan. 7, 2016, pet. denied) (mem. op.) ("Governmental immunity is waived for *valid* takings claims." (emphasis added)).

Before we discuss whether the Homeowners pleaded a *Penn Central* claim, we must first address the City's vested-rights and causation arguments, which—if meritorious—would obviate the need for a *Penn Central* analysis.

The City maintains that because the Homeowners do not have a vested right to use their properties in a certain way without restriction—specifically, as STRs—their regulatory-takings claim fails as a matter of law. Although a property owner generally has no vested right to use his property in a certain way without restriction, *see FLCT, Ltd. v. City of Frisco*, 493 S.W.3d 238, 271 (Tex. App.—Fort Worth 2016, pet. denied), the Homeowners do have a property interest in the properties themselves, *see Stratton v. Austin ISD*, 8 S.W.3d 26, 29 (Tex. App.—Austin 1999, no pet.) ("A person's property interests include actual ownership of real estate, chattels, and money." (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571–72, 92 S. Ct. 2701, 2706 (1972))). "In a regulatory taking, it is the passage of the ordinance that injures a property's value or usefulness." *Lowenberg v. City of Dallas*, 168 S.W.3d 800, 802 (Tex. 2005). Because the Homeowners have a vested property interest in the properties themselves and claim that the City has unreasonably interfered with their rights to use and enjoy their properties by passing the STR Ordinance, we conclude that they have identified a property right sufficient at this stage to allege a regulatory-takings claim. We further

note the unremarkable and well-established notion that private-property ownership is a fundamental right, *see Hearts Bluff*, 381 S.W.3d at 476, that embraces such "essential attributes" as "the right to use, lease[,] and dispose of it for lawful purposes," *Terrace v. Thompson*, 263 U.S. 197, 215, 44 S. Ct. 15, 17–18 (1923).

Next, we address causation. "Proximate cause is an essential element of a takings case." *Hearts Bluff*, 381 S.W.3d at 483. "[W]ithout causation, there is no 'taking.'" *Id.* (quoting *Tarrant Reg'l Water Dist. v. Gragg*, 43 S.W.3d 609, 615 (Tex. App.—Waco 2001), *aff'd*, 151 S.W.3d 546 (Tex. 2004)). "Causation is intrinsic to a takings claim. The governmental entity sued must have taken direct governmental action, or have been the proximate cause, of the harm." *Id.* at 484. "[O]wners of inversely condemned property cannot recover damages the government did not cause." *Koppolow Dev., Inc. v. City of San Antonio*, 399 S.W.3d 532, 539 (Tex. 2013); *see Hearts Bluff*, 381 S.W.3d at 483 (noting "the governmental entity must be the cause of the harm").

For the first time on appeal,[30] the City claims that the STR Ordinance was not the cause in fact of any alleged taking of the Homeowners' properties because STRs

---

[30]We consider this argument even though the City did not raise it in the trial court. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94–97 (Tex. 2012) (holding defendants may bring—and courts must address—immunity-based jurisdictional challenges that are raised for the first time on appeal, even in the context of an interlocutory appeal); *see also Dall. Metrocare Servs. v. Juarez*, 420 S.W.3d 39, 41 (Tex. 2013) ("Under *Rusk*, an appellate court must consider all of a defendant's immunity arguments, whether the governmental entity raised other jurisdictional arguments in the trial court or none at all.").

are not a permitted use under the existing Zoning Ordinance. The Homeowners respond that this argument fails because the Zoning Ordinance allowed "leasing unrestricted by duration." We agree, having concluded above that the Zoning Ordinance permitted STRs. We thus conclude that the Homeowners have sufficiently raised a fact issue about whether the STR Ordinance's passage caused an alleged taking under the *Penn Central* factors, to which we now turn.

Under the *Penn Central* test, a regulatory taking can occur when government action unreasonably interferes with a landowner's use and enjoyment of the property. *Sheffield*, 140 S.W.3d at 671–72; *FLCT*, 493 S.W.3d at 272. It is an ad hoc, fact-intensive inquiry rather than a formulaic test. *Sheffield*, 140 S.W.3d at 672–73. Guiding considerations under the *Penn Central* test include (1) "the economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Id.* at 672; *see Hearts Bluff*, 381 S.W.3d at 477–78. The inquiry focuses on whether the regulation has gone "too far" so as to constitute a taking. *Sheffield*, 140 S.W.3d at 671–72. The extent of the governmental intrusion may be a question for the trier of fact, but whether the facts alleged constitute a taking is a question of law. *Id.* at 673.

The City argues that the Homeowners' takings claim is invalid because the STR Ordinance did not unreasonably interfere with their rights to use and enjoy their properties under two of the three *Penn Central* factors: (1) the STR Ordinance's

economic impact on the Homeowners' properties is insufficient to amount to a taking and (2) the STR Ordinance does not interfere with the Homeowners' reasonable investment-backed expectations. The City contends that the evidence before the trial court conclusively established both factors in its favor.

The first factor—the regulation's economic impact on the property owner— "compares the value that has been taken from the property with the value that remains in the property." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 935–36 (Tex. 1998). Contrary to the City's assertion, lost profits are a relevant factor to consider in assessing the property's value and the severity of the economic impact on a property owner. *Sheffield*, 140 S.W.3d at 677; *see City of Sherman v. Wayne*, 266 S.W.3d 34, 45 (Tex. App.—Dallas 2008, no pet.) ("While it is true that government is not an insurer of the profitable use of property, it is incorrect to say that profit is not a consideration in determining the value of property."). Relevant here, a property owner's inability to continue renting his property on a short-term basis due to a city ordinance can constitute evidence of economic impact. *See Vill. of Tiki Island v. Ronquille*, 463 S.W.3d 562, 579 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

The City points out that the Homeowners can always lease their properties on a long-term basis and have admitted that at the time of the jurisdictional inquiry their properties were worth more than when purchased. The City's expert—a certified general appraiser—confirmed that each affected property's market value had increased since the Homeowners bought them. Further, according to the Tarrant

33

County Appraisal District's Chief Appraiser, the market value of each property had increased from 2016 through 2019.

But the Homeowners did not base their economic-impact allegations on decreased market value. They pleaded that STRs "generate higher average rent than long-term leases, even after expenses" and that the STR Ordinance prevents them from "participating in an active, lucrative market for [STRs]." The Homeowners' evidence supports this assertion. All the Homeowners testified that they were earning rental income from their STRs and that renting out their properties on a short-term basis generates higher revenues than long-term leasing does. Additionally, the Homeowners' expert—a certified general-real-estate appraiser—opined that over a ten-year period, the combined potential gross-rental differential between typical market rents for long-term versus short-term leases for the Homeowners' properties exceeded $4.2 million.

The City admits that lost profits are "one relevant factor" to consider in assessing a property's value and the severity of an ordinance's economic impact on a landowner. *See Sheffield*, 140 S.W.3d at 677. But, the City argues, the Homeowners' lost-profit allegations do not in and of themselves show a sufficient economic impact on which to base a regulatory-takings claim. The Homeowners did not simply *plead* lost profits, though; they presented supporting evidence—evidence of the type that a trial court can consider in a regulatory-takings claim. *See Vill. of Tiki Island*, 463 S.W.3d

34

at 579. We thus conclude that it is some evidence of the STR Ordinance's economic impact on the Homeowners' property. *See id.*

As for the second *Penn Central* factor—the extent to which the regulation interferes with the property owner's distinct investment-backed expectations—a property's existing and permitted uses constitute the affected property owner's "primary expectation." *Mayhew*, 964 S.W.2d at 936. The supreme court has noted that "[h]istorical uses of the property are critically important when determining the reasonable investment-backed expectation of the landowner." *Id.* at 937. Regulations at the time of purchase should be considered in determining whether the later, challenged regulation interferes with investment-backed expectations. *Id.* at 937–38. And knowledge of existing regulations "is to be considered in determining whether the regulation interferes with investment-backed expectations." *Id.* at 936. "The purpose of the investment-backed[-]expectation requirement is to assess whether the landowner has taken legitimate risks with the reasonable expectation of being able to use the property, which, in fairness and justice, would entitle him or her to compensation." *Edwards Aquifer Auth.*, 421 S.W.3d at 142.

The Homeowners pleaded that they had reasonable investment-backed expectations in purchasing and improving their properties for use as STRs based on the existing Zoning Ordinance and on City employees' representations that STRs were allowed under the Zoning Ordinance. *Cf. Sheffield*, 140 S.W.3d at 677–78 (noting that Sheffield's expectations of being able to develop property were "certainly

35

reasonable" based on zoning in place when Sheffield acquired the property and on assurances received from city officials in response to inquiries). The City contends that the Homeowners' expectations were not reasonable because the existing Zoning Ordinance did *not* allow STRs—an argument we have rejected.[31]

The City also argues that because only one of the Homeowners originally bought properties for use as STRs, the others had no investment-backed expectations when they purchased their properties. Contrary to that argument, the evidence reveals that five of the six Homeowners (Holt, the Perkinses, Muns, and A-1 Commercial) purchased their properties intending to use them as STRs. And as the evidence also shows, all the Homeowners invested significant sums to improve their properties so that they could be used as STRs. Because the existing Zoning Ordinance permitted STRs, we conclude that the evidence suffices to create a fact issue about whether the Homeowners had reasonable investment-backed expectations in purchasing and improving their properties for use as STRs.

Although whether facts amount to a taking is ultimately a legal question, the trial court must resolve disputed fact issues about the extent of the governmental intrusion on the property. *See id.* at 673. Here, fact issues exist regarding the STR Ordinance's economic impact on the Homeowners' properties and the reasonableness

---

[31]The City also argues that the Homeowners' investment-backed expectations were not reasonable because it is not bound by the statements its employees made to the Homeowners regarding STRs. We need not address this argument because we have determined that the existing Zoning Ordinance allowed STRs.

36

of the Homeowners' investment-backed expectations. *See Vill. of Tiki Island*, 463 S.W.3d at 578, 582 (holding that plaintiff adequately alleged and presented evidence that ordinance prohibiting STRs met the *Penn Central* factors). Accordingly, we conclude and hold that the trial court did not err by denying the City's amended jurisdictional plea attacking the Homeowners' takings claim. We thus overrule the City's third issue.

## VIII. The Homeowners' Declaratory-Judgment Claims

In its fourth issue, the City asserts that its governmental immunity is not waived for the Homeowners' three declaratory-judgment claims (preemption, retroactivity, and due-course-of-law) because the Homeowners have not pleaded facially valid claims.

The declaratory-judgments act ("the Act") allows a person whose "rights, status, or other legal relations are affected by a . . . municipal ordinance" to "have determined any question of construction or validity arising under the . . . ordinance" and to "obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a). The Act thus provides a limited governmental-immunity waiver for declaratory-judgment claims against municipalities challenging an ordinance's validity. *See City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 530 (Tex. App.—Austin 2014, no pet.); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b). Governmental immunity is waived when a party seeks a declaration that an ordinance is invalid based on constitutional grounds. *City of N.*

*Richland Hills v. Home Town Urb. Partners, Ltd.*, 340 S.W.3d 900, 911 (Tex. App.—Fort Worth 2011, no pet.) (op. on reh'g); *see Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 & n.3 (Tex. 2011). But a city's governmental immunity is waived only to the extent that a party has pleaded viable or valid constitutional claims. *See Hous. Firefighters' Relief & Ret. Fund v. City of Houston*, 579 S.W.3d 792, 800 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (citing *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8, 13, 14 (Tex. 2015)).

## A. Preemption

The Homeowners requested a declaratory judgment that the STR Ordinance is unconstitutional because it is impliedly preempted by Chapter 156 of the Texas Tax Code either alone or in combination with Chapter 92 of the Texas Property Code. The City argues that because neither statute reflects the legislature's clear and unmistakable intent to preempt local regulation of STRs, the Homeowners' preemption claim is facially invalid, and the trial court thus erred by denying the City's amended jurisdictional plea as to this claim.

The City of Grapevine is a home-rule city, deriving its power from Article XI, Section 5 of the Texas Constitution. *See* Tex. Const. art. XI, § 5; *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013). As a home-rule city, the City has the full power of self-government and looks to the legislature not for grants of power but only for limits on its powers. *See S. Crushed Concrete*, 398 S.W.3d at 678; *Dall. Merch.'s & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490–91 (Tex.

1993). But a home-rule city cannot enact an ordinance containing a provision inconsistent with Texas's constitution or general laws. *See* Tex. Const. art. XI, § 5(a) (mandating that no city ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State"); *see also BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 7 (Tex. 2016); *Dall. Merch.'s*, 852 S.W.2d at 490–91. A home-rule-city ordinance is thus unenforceable to the extent that it is inconsistent with a state statute preempting that particular subject matter. *BCCA Appeal Grp.*, 496 S.W.3d at 7; *Dall. Merch.'s*, 852 S.W.2d at 491.

"A statutory limitation on local laws may be express or implied." *City of Laredo v. Laredo Merchs. Ass'n*, 550 S.W.3d 586, 593 (Tex. 2018). Either way, the legislature's intent to impose a limitation must appear with "unmistakable clarity." *See id.*; *BCCA Appeal Grp.*, 496 S.W.3d at 7. The legislature's simply enacting a law addressing a particular topic does not automatically result in preemption. *See City of Richardson v. Responsible Dog Owners of Tex.*, 794 S.W.2d 17, 19 (Tex. 1990) ("[T]he mere fact that the legislature has enacted a law addressing a subject does not mean that the subject matter is completely preempted."); *City of Brookside Vill. v. Comeau*, 633 S.W.2d 790, 796 (Tex. 1982) (stating that "[t]he entry of the state into a field of legislation . . . does not automatically preempt that field from city regulation"). Local regulation is "acceptable" if it is "ancillary to and in harmony with the general scope and purpose of the state enactment." *Brookside Vill.*, 633 S.W.2d at 796.

Here, the Homeowners pleaded that the STR Ordinance—which doesn't just regulate STRs but bans them altogether—is implicitly preempted by Chapter 156 of the Tax Code and Chapter 92 of the Property Code. The Homeowners alleged that (1) because STRs are subject to mandatory state and local hotel-occupancy taxes, *see* Tex. Tax Code Ann. §§ 156.001(b), .051(a) .101, 351.001(4), .002(a), (c), and (2) because STRs are not banned or restricted by landlord–tenant law, *see* Tex. Prop. Code Ann. §§ 92.001, .002, .010, .152, the Tax Code—either alone or in combination with the Property Code—implicitly preempts the STR Ordinance. In short, the Homeowners contend that the Tax Code and Property Code tacitly preempt the STR Ordinance because allowing cities to ban STRs undermines the legislature's intent to generate tax revenue from them and is inconsistent with the legislature's "evident desire to allow such rentals without restriction."

But the Homeowners did not point to any provision in either the Tax Code or the Property Code that implies that the legislature meant to limit or forbid local regulations banning STRs. *See Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 645 (Tex. 1975) (op. on reh'g) (stating that a statutory limitation on local laws will not be implied unless the general law's provisions are "clear and compelling to that end" (quoting *Glass v. Smith*, 244 S.W.2d 645, 649 (Tex. 1951))). The statutory provisions that the Homeowners have cited do not show with "unmistakable clarity" that the legislature intended to limit local regulation of STRs. *Id.* (stating that the legislature's intention to limit the power of home-rule cities by general law must

"appear with unmistakable clarity" (quoting *City of Sweetwater v. Geron*, 380 S.W.2d 550, 552 (Tex. 1964))). Without such an indication, the Homeowners have failed to plead a viable preemption claim. And without such legislative intent, the Homeowners' pleadings affirmatively demonstrate incurable defects in jurisdiction that cannot be fixed by repleading. *See Miranda*, 133 S.W.3d at 226–27. We thus sustain this part of the City's fourth issue.

## B. Article I, Section 16 of the Texas Constitution (Retroactivity)

The Homeowners also wanted a declaration that the STR Ordinance is unconstitutionally retroactive because it takes away their "fundamental and settled" vested property rights under both the Zoning Ordinance and Texas common law to lease their property on a short-term basis.[32] As part of its fourth issue, the City argues that because the Homeowners have no vested right to use their properties as STRs, their retroactivity claim is facially invalid, and the trial court thus erred by denying the City's amended jurisdictional plea as to this claim.

---

[32]In support of their retroactivity claim, the Homeowners pleaded that "the property right owned by Plaintiffs was a vested property right. By taking away this fundamental and settled property right, the Grapevine STR Ban operates retroactively." Earlier in their pleading, the Homeowners alleged that "short-term renting of a home as allowed under prior law" is a vested right and that leasing is a "basic, sacrosanct property right" under the Texas common law. Construing the Homeowners' pleadings liberally, as we must, we conclude that they are claiming a settled right under both the Zoning Ordinance and Texas common law. As we will explain, courts have essentially scrapped the "impossible" task of "defin[ing] a vested right" in the retroactivity context, *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 142 (Tex. 2010), and look instead to whether a right is "settled," *Zaatari*, 615 S.W.3d at 190.

Article I, Section 16 of the Texas Constitution prohibits the creation of retroactive laws. *See* Tex. Const. art. I, § 16 ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."). "A retroactive law is one that extends to matters that occurred in the past." *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 707 (Tex. 2014); *see Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002) (defining a retroactive law as "a law that acts on things which are past"); *R.R. Comm'n of Tex. v. Pend Oreille Oil & Gas Co.*, 817 S.W.2d 36, 47 (Tex. 1991) ("A retroactive law is one that affects acts or rights which accrued before it became effective."). But not all retroactive laws are unconstitutional. *See Robinson*, 335 S.W.3d at 139 (stating that "mere retroactivity" is insufficient to invalidate a statute).

No bright-line test exists for determining whether a law is unconstitutionally retroactive. *Id.* at 145. To resolve that issue, a court considers three factors in light of the prohibition's objectives of protecting reasonable, settled expectations and of preventing legislative abuses: (1) "the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings;" (2) "the nature of the prior right impaired by the statute;" and (3) "the extent of the impairment." *Id.*

The City asserts that the STR Ordinance is not unconstitutionally retroactive because the Homeowners do not have a vested right to use their properties as STRs. The City thus contends that the Homeowners have "pleaded no vested property right that has been impaired or taken away by the [STR] Ordinance because they have no

42

absolute right to use their property for a particular purpose—such as an STR." But the Texas Supreme Court has "expressly rejected the vested-rights test, explaining that '[w]hat constitutes an impairment of vested rights is too much in the eye of the beholder to serve as a test for unconstitutional retroactivity,'" and announced that courts should instead assess the three factors listed above. *In re Occidental Chem. Corp.*, 561 S.W.3d 146, 161 (Tex. 2018) (orig. proceeding) (quoting *Robinson*, 335 S.W.3d at 143); *see Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 56 (Tex. 2014) (explaining that in *Robinson*, the supreme court "determined that classifying a right or interest as 'vested' in order to determine whether it has been retroactively diminished or impaired in violation of the constitution has not yielded an efficient and predictable framework"). When analyzing "the nature of the prior right [impaired by the statute under the second factor], we consider not whether the impaired right was 'vested,' but the extent to which that right was 'settled.'" *Zaatari*, 615 S.W.3d at 190 (citing *Robinson*, 335 S.W.3d at 142–43, 147, 149); *see, e.g.*, *Robinson*, 335 S.W.3d at 147, 148–49 (concluding that plaintiffs had a settled expectation that their right to recover on their already-filed common-law claims would not be altered by subsequent legislation and noting "[t]he presumption is that a retroactive law is unconstitutional without a compelling justification that does not greatly upset settled expectations").

Implicit in the Texas Supreme Court's rejection of the vested-rights test is that a settled right is not equivalent to a vested right. Here, the Homeowners pleaded that the STR Ordinance impaired their settled property rights under the common law and

43

under the Zoning Ordinance to lease their properties on a short-term basis: "By taking away this fundamental and settled property right, the Grapevine STR Ban operates retroactively." The City does not contend that the Homeowners have failed to plead settled rights or that the rights they have asserted are not settled. Because the Homeowners' retroactivity claim hinges on settled rather than vested rights and the City has not argued that the Homeowners' pleaded rights are not settled, we conclude that the Homeowners have pleaded a facially valid retroactivity claim. *See Zaatari*, 615 S.W.3d at 191 (concluding, in analyzing retroactivity claim on its merits, that property owners had a "settled interest" in their right to lease their properties short term and that the issue is not about the "property owners' right to use their property in a certain way," but about the owners' "retaining their well-settled right to lease their property"). We thus overrule this part of the City's fourth issue. [33]

## C. Article I, Section 19 of the Texas Constitution (Due Course of Law)

The Homeowners further sought a declaration that the STR Ordinance violates their substantive-due-course-of-law rights under Article 1, Section 19 of the Texas Constitution. *See* Tex. Const. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except

---

[33]In a footnote in its motion for en banc reconsideration, the City urges us to construe its brief liberally and reconsider our holding on this issue. *See Anderson v. Durant*, 550 S.W.3d 605, 617 (Tex. 2018). But even construing the City's briefing as encompassing an argument that the Homeowners do not have a settled right to lease their property on a short-term basis, we nevertheless conclude that the Homeowners have pleaded a facially valid retroactivity claim. *See Zaatari*, 615 S.W.3d at 191.

44

by the due course of the law of the land."). Specifically, the Homeowners allege that the City's STR Ordinance is unconstitutional because (1) the STR Ordinance's purpose is not rationally related to a legitimate governmental interest and (2) when considered as a whole, the STR Ordinance's real-world effect as applied to them could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest. *See Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 87 (Tex. 2015).

But before any substantive-due-process rights attach, a party must have a liberty or property interest that is entitled to constitutional protection. *Klumb*, 458 S.W.3d at 15. In the substantive-due-process context, this constitutionally protected right must be a vested right. *Id.* A vested right "has some definitive, rather than merely potential existence," *City of LaMarque v. Braskey*, 216 S.W.3d 861, 864 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (quoting *Tex. S. Univ. v. State St. Bank & Tr. Co.*, 212 S.W.3d 893, 903 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (op. on reh'g)), and is "something more than a mere expectancy based upon an anticipated continuance of an existing law," *Klumb*, 458 S.W.3d at 15 (quoting *City of Dallas v. Trammell*, 101 S.W.2d 1009, 1014 (Tex. 1937)). The City asserts that the Homeowners have no vested right to use their properties as STRs. It contends that the Homeowners' due-course-of-law claim is thus facially invalid and that the trial court therefore erred by denying the City's amended jurisdictional plea as to this claim.

45

Here, the Homeowners pleaded that "Texas common law enshrines leasing as a basic, sacrosanct property right" and that the Zoning Ordinance had allowed STRs. They also pleaded that the STR Ordinance will cause them to lose the money they invested in purchasing and improving their STRs. In support of their due-course-of-law claim, the Homeowners pleaded that "[p]roperty owners in this state have historic, basic protection for their leasing rights" and that the Homeowners have a "right to rent out their homes for any particular duration." They further pleaded that the STR Ordinance denies them rental income from their STRs and denies their "own property use and enjoyment" because the STR Ordinance would force them to "leave their properties vacant when they are not using them." Construing the Homeowners' pleadings liberally in their favor, we conclude that they have pleaded that they have a vested right to use their properties as STRs under both the Zoning Ordinance and the common law.[34]

We disagree with the Homeowners that they had such a vested right under the Zoning Ordinance. "[P]roperty owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made." *City of Univ. Park v. Benners*, 485 S.W.2d 773, 778 (Tex. 1972); *see, e.g., Mbogo v.*

---

[34]On appeal, the Homeowners assert they have a fundamental right to lease their properties that encompasses the right to lease their properties on a short-term basis. They also state that their due-course-of-law claim "stems from a broader, more fundamental vested right," implying that they are not claiming a vested right under the Zoning Ordinance. But construing the Homeowners' pleadings liberally in their favor, we conclude that they are also claiming a vested right under the Zoning Ordinance.

*City of Dallas*, No. 05-17-00879-CV, 2018 WL 3198398, at *8 (Tex. App.—Dallas June 29, 2018, pet. denied) (mem. op. on reh'g); *CBS Outdoor*, 2013 WL 5302713, at *8. And as noted, a vested right is "something more than a mere expectancy based upon an anticipated continuance of an existing law." *Klumb*, 458 S.W.3d at 15. Thus, although the Homeowners have a vested right in their properties,[35] they do not have a vested right under the Zoning Ordinance to use them as STRs. *See id.*; *Benners*, 485 S.W.2d at 778.

Nevertheless, although the Homeowners do not have a vested right arising under the Zoning Ordinance to use their properties as STRs, we conclude that they have a fundamental leasing right arising from their property ownership. Private property ownership is a fundamental right. *Hearts Bluff*, 381 S.W.3d at 476 (citing *Severance v. Patterson*, 370 S.W.3d 705, 709 (Tex. 2012) (op. on reh'g)); *Severance*, 370 S.W.3d at 709 ("Private property rights have been described 'as fundamental, natural, inherent, inalienable, not derived from the legislature[,] and as pre-existing even constitutions.'" (quoting *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140 (Tex. 1977))). Property ownership includes the right to lease to others. *See Calcasieu Lumber Co. v. Harris*, 13 S.W. 453, 454 (Tex. 1890) ("The ownership of land, when the estate is a fee, carries with it the right to use the land in any manner not hurtful to others; and the right to lease it to others, and therefore derive profit, is an incident of such

---

[35]"A person's property interests include actual ownership of real estate, chattels, and money." *Stratton*, 8 S.W.3d at 29.

ownership."); *see also Terrace*, 263 U.S. at 215, 44 S. Ct. at 17–18 (noting that "essential attributes of property" include "the right to use, lease[,] and dispose of it for lawful purposes"). The right to lease is a stick within a property owner's metaphorical bundle of rights. *See* Emily M. Speier, Comment, *Embracing Airbnb: How Cities Can Champion Private Property Rights Without Compromising the Health and Welfare of the Community*, 44 Pepp. L. Rev. 387, 395–97 (2017).

Given the nature of real-property rights, we conclude that the Homeowners have a vested right to lease their properties and that this right is sufficient to support a viable due-course-of law claim. *Cf. Zaatari*, 615 S.W.3d at 191 (concluding that, in analyzing retroactivity claim, property owners had a "settled interest" in their right to lease their properties short term and that the issue is not about the "property owners' right to use their property in a certain way," but about the owners "retaining their well-settled right to lease their property"); *Vill. of Tiki Island*, 463 S.W.3d at 587 (holding that, in analyzing whether an STR owner had proved an irreparable injury to a vested right necessary to support an order temporarily enjoining an ordinance banning STRs, STR owner had a narrow vested right to continue operating existing STR after city passed ordinance banning STRs but grandfathering in existing STRs).

In its motion for en banc reconsideration, the City asks us to reconsider our holding that Texas property owners have a vested right to lease their homes on a short-term basis. This overstates our holding. To be clear, we hold that a property

48

owner has a vested right to lease his property. Whether the durational restrictions imposed by the STR Ordinance violate the Homeowners' due-course-of-law rights regarding their right to lease goes to the case's merits, an altogether improper inquiry at this stage of the case.

Because the Homeowners have pleaded a viable due-course-of-law claim, we overrule this part of the City's fourth issue.

### IX. The Homeowners' Injunctive-Relief Request

The Homeowners pleaded for temporary and permanent injunctive relief against the City, asking the trial court to enjoin the City from enforcing the STR Ordinance. In the City's fifth issue, the City argues that its immunity has not been waived as to the Homeowners' requests for injunctive relief because (1) the Homeowners have not pleaded a valid cause of action and (2) the City has immunity from claims for injunctive relief based on allegations that government officials are violating the law or exceeding their powers under the law. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009) (concluding that suits complaining of ultra vires acts cannot be brought against a governmental unit but must be brought against the allegedly responsible government actor in his official capacity); *see also Tex. Dep't of Ins. v. Reconveyance Servs., Inc.*, 306 S.W.3d 256, 258–59 (Tex. 2010) (concluding that when a plaintiff's claims are substantively ultra vires claims, they must be brought against the appropriate government official in his official capacity).

49

Governmental immunity does not bar suits challenging an ordinance's constitutionality and seeking equitable relief. *See Patel*, 469 S.W.3d at 75–76. First, as discussed above, the Homeowners have pleaded valid claims challenging the constitutionality of the STR Ordinance. Second, contrary to the City's assertion, the Homeowners have not alleged that any City officials are violating the law or exceeding their powers under the law nor are the Homeowners' claims substantively ultra vires claims. *See id.* at 77 ("[B]ecause the [plaintiffs] challenge the validity of the cosmetology statutes and regulations, rather than complaining that officials acted illegally or failed to act, the ultra vires exception does not apply."). The City is thus not immune from the Homeowners' requests for injunctive relief. *See id.* We overrule the City's fifth issue.

## X. Conclusion

Having determined that the Homeowners failed to plead a facially valid preemption claim, we reverse the part of the trial court's order denying the City's amended plea to the jurisdiction as to that claim and render judgment dismissing it. We affirm the remainder of the trial court's order.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: December 23, 2021